## McKinnon v. Mertz, Appellant.

*School law—Increase of debt—Over legal limit—Contract for school building—Payment.*

A contract for the erection of a school building at a price which in addition to previous existing indebtedness would create a total debt in excess of two per cent of the assessed valuation of the property of the school district, will be enjoined as an illegal increase of indebtedness, although the manner of payment is limited to available funds of current revenues as they may arise from a special tax levy or otherwise.

Argued April 26, 1909. Appeal, No. 81, Oct. T., 1909, by defendants, from decree of C. P. No. 1, Allegheny Co., Sept. Term, 1908, No. 524, on bill in equity in case of C. L. McKinnon et al. v. Jacob Mertz et al., School Board of the School District of McKees Rocks, Allegheny County, Pa., and H. L. Kreusler, Contractor. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity by taxpayers to enjoin the carrying out of a contract for the construction of a school building. Before MILLER, J.

From the adjudication it appeared that on June 9, 1908, the defendant school board entered into a written contract with H. L. Kreusler, to build a school building for $148,970. Subsequently on July 27, 1908, a supplemental agreement was executed which recited that the question had been raised as to whether said contract by its terms creates an indebtedness in excess of the amount which the said district is permitted to contract, without the authority of the legal electors of said school district.

And provided further as follows:

"Now, this supplemental agreement witnesseth: That said agreement of June 9th, 1908, shall create no indebtedness of said school district to said H. L. Kreusler, except for work done and materials furnished under said contract of the value in amount of the funds legally available to said school board for building purposes at the time the said contract was entered into.

"It is further agreed by and between the parties hereto, that said H. L. Kreusler shall continue the work of the erection of said building in accordance with the conditions of the contract of June 9th, 1908, so long as any funds legally available for the erection of said building when the said contract was entered into, shall remain unexpended.

"If at any time the said school board shall be without legally available funds to further carry on said work, then said Kreusler shall cease work on said building, until said board is provided with funds for further building purposes,

when, if the school board so elect, he shall resume work under said contract, and continue the same to completion, or so long as funds are legally available to the school board for carrying on the said work. Should said Kreusler cease work on said building for the cause hereinbefore mentioned, or be compelled to cease for any other cause, he shall then be entitled to be paid on the estimates of the architect in full for all work then done and material then furnished by him, in so far as the funds for this purpose legally available to the school district will permit."

MILLER, P. J., filed the following opinion:

Section 8, art. IX, of the constitution of Pennsylvania, after fixing the ultimate limit of the debt any county, city, borough, township, school district, or other municipality or incorporated district, may have, as not to exceed seven per cent of the assessed value of taxable property therein, further provides: "Nor shall any such municipality, or district, incur any debt, or increase of indebtedness beyond two per cent upon the assessed valuation of property, without the assent of the electors thereof at a public election."

It is manifest that the contract price, standing alone, for the erection of this building in the sum of $148,970, in addition to the previous existing indebtedness, created a total debt in excess of two per cent of the assessed valuation of the property; but it is earnestly contended that the manner of payment in the original, and especially in the supplemental agreement, "from available funds" limits the debt to an amount less than the contract price, and may keep it within the constitutional prohibition.

The purpose contemplated by the contracts was the erection on or before August 1, 1909, of a completed school building, to be paid for on monthly estimates; final payment to be made of the fifteen per cent remaining, within thirty days after completion; the debt was fixed by the contract price, and there is nothing in the clause relating to available funds in the original or supplemental contract, that decreases the contract price as fixed; on the contrary, the supplemental contract reaffirms

the original in every material respect, except so far as it would appear to give the parties discretion to work piecemeal on this building, thus resulting in an incomplete building at an indefinite time; not only does the amount of the contract price remain, but the contractor is to receive interest on all deferred payments; the modification is as to the manner of the payments, but is not a decrease of the indebtedness.

Granted that the defendant parties to the contract, intended to avoid the prohibition of the constitution by limiting the manner of payment to available funds of current revenues as they may arise from a special tax levy, or otherwise, it is manifest that they bound the district for a fixed debt of at least the contract price; this exceeds the limit of their right, and an effort to avoid the increase by stopping the contractor when available funds cease, in the absence of an abrogation of the contract price itself, is futile.

The contention that the board had over $102,000 on hand when the contract was made, while admitted by the plaintiffs for the purpose of this case, is far from the exact fact; neither the funds collected by the unbonded delinquent collector, nor the taxes for 1908 levied, were, or are in the treasury of the board, nor are available. There was more clearly but one-half of this estimated amount available when this contract was made.

If there were nothing more in these contracts than to provide for the district's ordinary expenses within the current revenues, the conclusion of Wade v. Oakmont Borough, 165 Pa. 479, might be applicable; but the erection of this school building is an extraordinary expense. The contracts contemplate a complete structure within a fixed time, to be delivered to the district at a fixed price.

The same attempt to avoid the constitutional prohibition appears in Brown v. City of Corry, 175 Pa. 528, where a contract to construct a complete water system, and deliver it to the city, was entered into, the waterworks to be paid for, inter alia, at the rate of $6,000 per annum for twenty years, "From the current revenues of said city and not otherwise." There as here, was the incurring of an extraordinary expense

for a structure to be erected and delivered upon completion; the manner of payment there, as here, did not change the creation of the principal debt.

The liability to pay for the work as done, out of available funds, in the special manner contemplated by the supplemental agreement, is a debt, or a series of successive debts; separately and in the aggregate, they are obligations of the district, limited only by the amount of the original contract price.

As held in Brown v. City of Corry, 175 Pa. 528, and in the cases therein cited, "the making of a contract for a fixed price . . . . or the borrowing of money, creates a debt, irrespective of the method of remedy for its collection, and whenever by the terms of its creation, unless for the ordinary expenses of the municipality, it exceeds the constitutional prohibition, it cannot be sustained."

Funds legally available is a very indefinite term. Only a small part of this contract price could be met by present available funds; how the rest was to be provided does not appear; a public improvement to be completed within a limited time is imperiled if depending upon a fluctuating, indeterminable balance of current funds. Suppose the funds are exhausted, and under the contract the work stops, how are they to be supplied? When will the building be finished? Suppose the work goes on, the board in good faith believes it can raise available funds and it fails; the builder "shall then be entitled to be paid on an estimate of the architect in full for all work then done and material furnished by him;" if there are no funds available, is there any question of his right to recover, and may it not be the full amount of this contract price?

It is clear that the erection of this building is a necessity; it must be admitted as a general proposition, that no money is so well used as that which is necessarily and honestly applied towards the erection and maintenance of needed school buildings, and the support of a well-established school system; but the law points out the way of procedure, and it must be followed.

In the meanwhile if necessity exists for the preservation of what has been done, and the safe-guarding of the rights of those interested, application may be made for such temporary orders as will best serve all interests.

*Error assigned* was decree enjoining the carrying out of the contract.

*R. A. & Jas. Balph*, for school district, and *Kinnear, Mc-Closkey & Best* for H. L. Kreusler.—It has been held that a municipal contract to pay for water, light, sewage, etc., at stated times in the future, does not create an indebtedness for the aggregate amount of such payment within the meaning of the provision limiting the indebtedness of the municipality, and the validity of such a contract is to be tested by the amount of the first payment due thereunder: City of Erie's Appeal, 91 Pa. 398; Wade v. Oakmont Boro., 165 Pa. 479; Webb City, etc., Waterworks Co. v. Carterville, 153 Mo. 128 (54 S. E. Repr. 557); Grant v. Davenport, 36 Iowa, 396; Voss v. Waterloo Water Co., 163 Ind. 69 (71 N. E. Repr. 208); Cain v. Wyoming, 104 Ill. App. 538; Doland v. Clark, 143 Cal. 176 (76 Pac. Repr. 958).

A contract for indebtedness partly within and partly beyond the limitation is void only as to the excess: Gray v. Bourgeois, 107 La. 671 (32 So. Repr. 42); State v. Blake, 26 Wash. 237 (66 Pac. Repr. 396); Herman v. Oconto, 110 Wis. 660 (86 N. W. Repr. 681); McPherson v. Foster Bros., 43 Iowa, 48; Stockdale v. School District, 47 Mich. 226 (10 N. W. Repr. 349); Daviess County v. Dickinson, 117 U. S. 657 (6 Sup. Ct. Repr. 897).

*John Marron*, of *Marron & McGirr*, for appellees.—The device of the defendants to escape the constitutional provision is not new nor practicable, as a review of the cases will show: Brown v. City of Corry, 175 Pa. 528.

PER CURIAM, May 20, 1909:

The judgment is affirmed on the opinion of the court below.