# Ferguson and McDowell, Appellants, v. Public Service Commission.

*Jurisdiction—Municipally owned plant to be operated by public service corporation.*

A municipally owned gas plant, leased to a public service corporation which operates the same, is not subject to the general regulation of the Public Service Commission.

Where the property operated by the public service company, although owned by the city, was leased by the public service company, prior to the effective date of the Public Service Company Law, and where the matter complained of before the commission relates to a subject fully provided for and covered in the agreement of lease, the Public Service Commission has no jurisdiction over the subject-matter of the complaint.

Argued October 1, 1923. Appeal, No. 139, Oct. T., 1923, by plaintiffs, from the report and order of the Public Service Commission of the Commonwealth of Pennsylvania, Complaint Docket, No. 2777, 1919, dismissing the complaint in the case of Robert A. Ferguson and Edward McDowell, copartners, trading as Ferguson and McDowell, v. United Gas Improvement Company. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Complaint against the United Gas Improvement Company for refusal to assume the cost of laying service pipes.

The facts are stated in the opinion of the Superior Court.

The commission dismissed the complaint for want of jurisdiction. Plaintiffs appealed.

*Error assigned* was the order of the commission.

*George E. Alter,* of *Alter, Wright & Barron,* and with him *George H. Detweiler* and *James Alcorn,* for appellants.

*Samuel Rosenbaum,* Assistant City Solicitor, and *David J. Smyth,* Solicitor, for City of Philadelphia, intervening appellee.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY KELLER, J., November 21, 1923:

In 1897, long before a state commission to regulate public service companies was contemplated in this Commonwealth, the City of Philadelphia leased to the United Gas Improvement Company its municipally owned gas plant. The contract was for thirty years, and, as part

consideration, provided for the expenditure by the lessee during the term of the lease of at least $15,000,000 in the improvement, extension and betterment of the manufacturing and distribution system, which should be turned over to the city without cost, in first class condition, as a part of its plant, at the end of said term. It also made provision as to the candlepower of gas to be supplied consumers, and the rates to be charged therefor, subject to limited reductions at stated times if ordained by city councils; and for the payment by the lessee to the city of all sums received from the sale of gas in excess of certain stated rates; as well as many other regulatory matters which need not be referred to here, except the following: "Said The United Gas Improvement Company, its successors and assigns, shall at its own expense lay and furnish connecting or service pipes......to the inside of the consumer's property line." This lease was in force and operation when the Public Service Company Law was passed and must have been known to the general assembly at that time; and there may have been similar leases in force in other municipalities.

The present appeal concerns this municipal plant, operated by the lessee under the terms of the foregoing lease. We are not concerned with any other operations by the United Gas Improvement Company. Both the complaint and the answer make it clear that the mains and gas plant involved in this proceeding are those owned by the City of Philadelphia and leased to the United Gas Improvement Company in 1897.

The complaint was that said company improperly compelled appellants, who are builders of houses to pay for the cost of laying service pipes from its mains on South Peach Street to fifty-six houses built by them. The answer averred that the charge against complainants was only for laying the service pipes from their property line to the inside house line, which, if true, would justify itself. But the answer also averred that the Public Service Commission was without jurisdiction

in the premises and the commission so decided.   This appeal questions the legality of that decision.

It is unquestioned that if the City of Philadelphia were operating its own gas plant, the commission would not have jurisdiction of this complaint: Barnes Laundry Co. v. Pittsburgh, 266 Pa. 25.   It is likewise not disputed that the United Gas Improvement Company is a public service corporation, and, notwithstanding the present order, subject, in various respects, to the supervision and regulation of the commission, (e. g. reporting accidents: article II, section 1, clause (x) ; issuing stock and bonds: article III, section 4; acquiring controlling rights in other companies: article III, section 6 (c) ; etc.).   The question before us is whether the exemption of the city's gas works from regulation by the commission applies to the United Gas Improvement Company operating it as lessee.

The portions of the Public Service Company Law most directly involved are found in article I, section 1 :*

(a)   "The term 'Corporation,' as used in this act,..... shall not include municipal corporations, except as otherwise provided in this act."

(b)   "The term 'Service' is used in this act in its broadest and most inclusive sense, and includes any and all acts done, rendered or performed, and any and all things furnished or supplied, and all and every the *facilities* used or furnished or supplied by public service companies in the performance of their duties to their patrons, employes and the public......"

(c)   "The term 'Facilities,' as used in this act, includes *all plant and equipment of a public service company,* which includes all tangible real and personal property, buildings, materials, easements, rights-of-way,......gas tanks, holders, retorts, ducts, pipes, pipe galleries, pipe lines, mains, meters, lamps......and *any and all other means and instrumentalities* in any manner owned, *operated, leased,* licensed, *used,* controlled, furnished or

_____
* Paragraph letters and italicization do not appear in the act.

supplied for, by, or *in connection with the business of any public service company:* Provided, however, *That no property owned by the Commonwealth of Pennsylvania or municipality thereof, at the date when this act becomes effective, shall be subject to the Commission or to any of the terms of this act,* except as elsewhere provided herein."

A number of things are evident from a careful reading of these paragraphs: (1) That the term, "Public Service Companies," as used in paragraphs (b) and (c), does not include municipal corporations, for they are expressly excluded in paragraph (a). (2) That the exemption from the jurisdiction of the commission and the terms of the Public Service Company Law of property owned by a municipality must, therefore, refer to such property when operated, leased or used by a public service company. (3) That the term "Property," as used in the proviso in paragraph (c) relates to the plant and equipment, just before so fully described. (4) That as the term "Facilities," needs defining because of its use in paragraph (b), explanatory of "Service," paragraph (c) must be read into the definition of "Service," and the exemption of municipally owned property from the jurisdiction of the commission and the terms of the Public Service Company Law must be applied to the "Service" in which such property is used as a facility.

Upon consideration of the whole act, it also seems clear that the words in the proviso of paragraph (c), limiting the property thus exempted from the terms of the act to such as was owned by the municipality "at the time this act becomes effective," were only used so as to make it conform to the distinctions elsewhere made in the act between a public utility plant owned by a municipality on January 1, 1914, and one acquired thereafter; for the act expressly provides that the approval of the commission must be obtained before any municipal corporation can acquire, construct or begin to operate any such plant or equipment after that date; except, how-

ever, that a municipal corporation may *extend* its plant without the consent of the commission in a district that is not being supplied by a public service company, or may complete the construction of a plant and begin to operate the same if it was begun before the Public Service Company Law became effective: (article III, section 4 (d)). Its purpose was not to distinguish between a plant in operation before January 1, 1914, and the improvements and betterments made thereto thereafter, and subject the latter to the terms of the act while exempting the former. Extensions, improvements and betterments made after January 1, 1914, to a plant owned by a municipality prior to that date become a part of the plant which is exempted from the jurisdiction of the commission. The act certainly contemplated no such absurd situation as that a main or pipe laid in 1913 should not be subject to the jurisdiction of the commission while an extension of it laid in 1915 would be subject to such jurisdiction. The case of Barnes Laundry Co. v. Pittsburgh, supra, permits no such distinction. See also, Hanna v. Lykens Water Co., 278 Pa. 262, 266, where the right of eminent domain was held to follow an extension of territory.

We have, therefore, a clear statement by the legislature that a municipally owned plant is not subject to general regulation by the commission, or except as specially provided, to the terms of the Public Service Company Law, and this exemption applies to such a plant, acquired before January 1, 1914, while leased and operated by a public service company.

It was said in Barnes Laundry Co. v. Pittsburgh, supra: "Municipalities are supposed to act primarily for the public good—not to earn dividends; moreover, they are financed along quite different lines from other corporations, and managed by popularly elected officers, who, as just said, are presumed to act for the public weal, and, when they fail to do so, may be turned out by their constituents at stated intervals. These consider-

ations with others which may readily be called to mind, account for and justify the omission of municipal corporations from the general application of our Public Service Company Act," p. 37. These same considerations are pertinent with respect to a lease, covering the operation of its municipally owned plant, entered into between a city and a public service company. In making the contract the city is presumed to have taken care of the rights of its citizens and the corporation to have looked after the interests of its stockholders. When, as here, the city is not paid a definite money rental but is to receive the benefit of certain improvements to be made upon a large scale, and the excess over a certain rate per thousand cubic feet charged the public for gas, which councils may remit altogether, it would seem that the legislature might very well have intended to leave such a contract unimpaired and entrust to the city and the courts the duty of safeguarding the interests of the citizens, rather than permit a state board to set aside its provisions and substitute for the agreement of the city and the public service company its own judgment as to what the gas plant was worth, the fair return that the city was entitled to receive thereon as rental, the additions and improvements necessary to be made and who was to pay for them, and the rates proper to be charged consumers. We see nothing anomalous or improper in the legislature recognizing such a condition and providing that such a contract duly entered into before the Public Service Company Law went into effect should be upheld.

Nor is it special legislation within the inhibition of the Constitution. It applies to all municipal corporations owning any public utility plant at the effective date of the Public Service Company Law. A law general in its character may extend only to particular classes and not be obnoxious to the provisions of the Constitution if all persons of the same class are treated alike under similar circumstances and conditions. The classification

was necessary from the manifest peculiarities clearly distinguishing such municipal corporations from others not owning such plants, and was not arbitrary or unreasonable: Barnes Laundry Co. v. Pittsburgh, supra; Springfield Gas & Electric Co. v. City of Springfield, 257 U. S. 66, 66 L. Ed. 131.

As the public service company operating the plant is only a lessee using the property of a municipal corporation under contract, the question of confiscation of the former's property does not arise in this proceeding. Our Supreme Court has held that, except where the police power requires the intervention of the Commonwealth, such contracts made prior to the Public Service Company Law are not affected by its passage: Collingdale Boro. v. Phila. R. T. Co., 274 Pa. 124.

Our interpretation of the clause under consideration is supported by other parts of the act. Article II, section 1 (i), which directs the adoption and use by public service companies of the system of accounts, etc., prescribed by the commission, provides: "That this subsection shall also apply to all municipal corporations, with respect to the accounts, records, and memoranda relating to the rendering or furnishing by them to the public of any service of the kind or character rendered or furnished by public service companies, and to the making of reports in relation thereto: And provided further, That all corporations and persons, operating under lease or other contract any such plant or other facilities, owned by such municipal corporation, shall adopt, use, and keep, in respect to such operation of such plant or other facilities under such lease or contract, such form or system of accounts as shall be adapted to and reasonable under the circumstances, and consistent with the obligations of such lease or contract, or of any contract made in pursuance thereof......" It thus provides that the accounts kept by a public service company operating a municipal plant under lease or contract need conform to the commission's form or system of accounts only in

so far as it shall be adapted to and reasonable under the circumstances and consistent with the obligations of such lease or contract. Surely, if the Public Service Commission has authority to set aside a lease or contract for the operation of a municipally owned plant and substitute its own idea of what the terms of such lease or contract ought to be, there would be no occasion for limiting the use by such public service company of its system of accounts to such a one as should be adapted to and reasonable under the circumstances and consistent with the obligations of the lease or contract. This clause recognizes as clearly as words can do so that such a lease or contract for the operation of municipally owned property is not subject to the general jurisdiction of the Public Service Commission and that its terms cannot be set aside or a new contract substituted therefor by the commission. It seems clear, therefore, that the Public Service Company Law, not only does not subject a municipal corporation engaged in the same business as a public service corporation to the general supervision and jurisdiction of the commission, but that it specially exempts from such general supervision and regulation the property and plant belonging to such municipal corporation at the date the act became effective when operated by a public service corporation under lease or contract, and that this exemption extends to improvements, extensions and betterments made to such plant during the life of such contract. When the contract is ended the municipal corporation may then operate the plant directly without being subject to the regulation of the commission as to service and rates, or it may contract with a public service corporation to operate it under lease; but in the latter event, the contract or lease must be approved by the Public Service Commission (article III, section 2 (b) and section 11) and to that extent is subject to its supervision and regulation. This lease does not expire until 1927, so that the time for the ap-

proval of such a contract or lease by the commission has not arrived.

While the Public Service Company Laws are different in the several states and hence the decisions of one state cannot always be applied, even persuasively, to those of another, nevertheless they are of value in interpreting related provisions in our Public Service Company Act when the facts are similar. In Gates v. P. S. C. of Oregon, 167 Pac. 791, and 168 Pac. 939, 86 Oregon 442, the plaintiff built water works for the City of Dallas, Oregon, and as part of the consideration for such construction the contract provided that the plant when completed should be leased to him for twenty years, the lease fixing the rates to be paid for water by the citizens of Dallas. Subsequently, the Public Service Commission of Oregon made an order reducing the rates fixed in the lease. The Supreme Court of Oregon set aside the order under the following provision of the Oregon Public Utilities Act: "No plant owned or operated by a municipality shall be deemed a public utility under or for the purpose of this act." The case was twice argued, the attorney general first contending that the facts in the case did not constitute the City of Dallas the owner of the plant; and on reargument, that the character of ownership intended by the legislature in making the exception was such as carried with it the operation of the plant in distributing water to its inhabitants, as well as ownership in fact. But the court ruled against him on both points and said: "It seems to us that this clearly excludes the plant in question from the jurisdiction of the Public Service Commission. The lawmakers evidently intended that where a municipality either owned or operated such a plant, the city authorities should regulate the rates to be charged," and, "Had it been the intention of the legislature to include within the operation of the Public Utilities Act all utilities owned by a city, but operated by lessees, it could easily have said so at the expense of one line of print. It is quite probable

that the legislature had in mind the doctrine that cities which had already contracted by lease with private persons for the operation of their utilities should not be allowed to ask the Public Utilities Commission to modify their contracts."

It appearing from the record before us that the property operated by the United Gas Improvement Company in connection with the complaint in this case formed part of the plant owned by the City of Philadelphia and leased by it to the United Gas Improvement Company in 1897, prior to the effective date of the Public Service Company Law, and that the matter complained of relates to a subject fully provided for and covered in the terms of said agreement, we are of opinion that the Public Service Commission had no jurisdiction over the subject matter of the complaint and that the order of the commission thereon was valid and in conformity with law.

The order is affirmed and the appeal dismissed at the costs of the appellants.