Wilson, Appellant, *v.* Public Service Commission.

Argued October 3, 1934.

 Before Trexler,
P. J., Keller, Cunningham, Baldrige, Stadtfeld,
Parker and James, JJ. 

*S. Davis Wilson, P. P.,* and *Joseph Sharfsin,* for appellant.

*E. Everett Mather, Jr.,* with him *Paul H. Rhoads, Samuel G. Miller* and *John Fox Weiss,* for Public Service Commission.

*F. B. Bracken,* and with him *W. James MacIntosh,* for Philadelphia Gas Works Company.

*James Hall Prothero,* with him *John J. Elcock, Ernest Lowengrund,* Assistant City Solicitors, and *David J. Smyth,* City Solicitor, for City of Philadelphia.

Opinion by Keller, J., February 1, 1935:

This is an appeal by S. Davis Wilson from an order of the Public Service Commission dismissing a complaint filed by him relative to the gas plant owned by the City of Philadelphia and operated by The Philadelphia Gas Works Company, assignee of United Gas Improvement Company, under a contract between the city and United Gas Improvement Company, duly ap-

proved by the Commission. The complaint was dismissed by the Commission because, under the Public Service Company Law (Act of July 26, 1913, P. L. 1374, and its amendments) it has no jurisdiction over the rates and services rendered by a municipally owned plant, and no power to enforce compliance with the provisions of a contract relative to the operation of such a plant by a public service company.

The facts may be stated as follows:

In 1897, the City of Philadelphia, which owned, and previously had operated, its own gas plant leased it to the United Gas Improvement Company for a term of thirty years. The power of the Public Service Commission to regulate the service and facilities of the municipally owned plant while operated by the lessee was considered by us in Ferguson & McDowell v. P. S. C., 82 Pa. Superior Ct. 238, where we held that the Commission had no jurisdiction in the premises; that the exemption from jurisdiction specifically granted to municipal corporations in the act applied as well to a public service company operating a municipally owned plant under a lease made prior to the Public Service Company Law. Our construction of the act as respects such jurisdiction, or want of it, is set forth at length in pages 241-243 of that opinion and need not be repeated here.

As the term of that lease neared its expiration the city authorities and the lessee negotiated with each other relative to a new contract and on February 8, 1926 they entered into a new agreement, which while in form a lease was in reality an operating agreement, to take effect January 1, 1928, at the expiration of the former lease. Under this contract the United Gas Improvement Company, or its assignee duly approved by the city, was to take possession and control of the city's gas plant, make all needed extensions thereto on behalf of the city, operate the plant in such manner

as to reimburse itself for renewals, extensions, improvements, not exceeding two million dollars a year, pay the city an annual cash return of four million two hundred thousand dollars and pay itself an annual management or operating fee of not less than six hundred thousand dollars, nor more than one million one hundred thousand dollars, based on the efficiency of the management of the gas works as reflected in the cost of gas and in the growth of the business, to be calculated according to a formula provided in the contract. Any surplus remaining after these payments was to be used to lower the price of gas to the public or to be put back into the gas works. A gas commission, composed of three members, one appointed by the mayor of the city, with the advice and consent of city council, one by the gas company, and the third by the other two, was to supervise the operation of the works by the gas company, and fix the retail and wholesale prices to be charged for gas. No fixed term was provided for the contract, but it could be terminated by either the city or the gas company at the expiration of any ten year period by giving eighteen months' written notice of its intention to do so. The contract provided for certain heating value requirements and tests and purity requirements and tests as to the gas to be manufactured and sold, for pressure regulations, testing stations and for liquidated damages to be paid by the gas company to the city, at the former's own cost, for failure to comply with these requirements and the orders of the gas commission as therein provided. It is not necessary to give further details of the contract, which takes up 28 printed pages, and which we have summarized roughly and not exactly, further than to note that in case of default by the gas company in the substantial performance of the contract the following express provision was made by clause 17: "In the event that gas company shall

default in the substantial performance of any of the covenants or conditions of this lease on its part to be performed, the mayor or executive head of the city, if authorized by ordinance of city council, shall on its behalf have the right to commence suit in a court of equity for the purpose of having this lease terminated by decree of said court, and if after due hearing said court shall find that any default or defaults of gas company, alleged by city as the basis of said suit, actually occurred and were of such a nature as to constitute legal justification for the rescission of said lease by city, said court may thereupon enter a decree declaring this lease terminated on a date therein to be appointed: *Provided,* however, That by the terms of said decree it shall be made a condition precedent to the termination of this lease on account of said alleged default or defaults of gas company, that city shall pay to gas company, a sum or sums of money which shall be sufficient to reimburse said gas company, for any moneys that have been advanced by it for working capital and as may be then outstanding as capital expenditures. Either party to any suit brought by city under the provisions of this clause, shall have the usual right of appeal from any decree entered therein, and such appeal shall operate as a stay of proceedings. Resort to this remedy by city shall not preclude city from enforcing, either in any suit brought under this clause or any separate action of law, any claim or claims for damages which it may have by reason of any default hereunder of gas company.''

And clause 7 (4) provided that in order that the gas commission might determine the price of gas to be charged, the gas company, on or before the first of October of each year, should file with the gas commission and furnish copies to the mayor and city council a statement for the twelve months ending the

last day of August preceding, setting forth certain matters and statistics specifically enumerated in said clause, but which it is not necessary for us to incorporate in this opinion.

This contract was duly presented to the Public Service Commission, as required by Art. III, section 11 of the Public Service Company Law, before its effective date, and after hearing was, on April 6, 1926, approved by the Commission, and became a valid contract.

By consent of city council the United Gas Improvement Company, as provided in clause 1, assigned the contract to The Philadelphia Gas Works Company, the contract providing, however, that no assignment should impair or diminish the primary obligation and liability of the former to perform all the obligations of the contract.

It is to this contract that the complaint of the appellant related.

Before going further it may be proper to mention the matters embraced within the complaint. The appellant's argument, both printed and oral, has gone far afield and touched upon matters not complained of nor brought to the attention of the Commission in the complaint filed. The prayer of the complainant asked for:

1. That the Commission investigate and inquire into the circumstances surrounding a change of the gas rate, reducing the price of gas from 95 cents per thousand cubic feet to 90 cents per thousand cubic feet, made on September 27, 1932 to take effect October 1, 1932, instead of January 1, 1933.

2. That the Commission order the cancellation of a contract entered into in 1928 between the gas company and the Philadelphia Coke Company, for the purchase of gas by the former from the latter,—which right of purchase was specifically provided for in the contract, when recommended by the gas commission

and approved by city council, expressed by ordinance (clause 4) —, and require that all gas sold by gas company shall be manufactured in the city-owned gas plants.

3. That the contract between the City of Philadelphia and the company be so modified as to permit the fixing of the gas rates hereafter by the Public Service Commission instead of the gas commission.

4. That the ''managing company'' (United Gas Improvement Co.) be precluded from permitting the Philadelphia Gas Works Company to engage in business with wholly owned subsidiaries of the managing company.

5. That the said ''managing company'' (United Gas Improvement Co.) be surcharged a fair, equitable and adequate sum for excess charges collected by the said company growing out of an excess expenditure by it in the sum of $989,817.87, representing the cost of purchased gas over and above the cost of the gas if the same had been manufactured in the city-owned gas plants.

It will be noted that not one word in these prayers asks for the cancellation or revocation of the order of the Commission entered April 6, 1926, approving the contract between the city and the United Gas Improvement Company aforesaid. Notwithstanding this, appellant has devoted a large part of his argument, both oral and written, to a discussion of the power of the Commission to revoke its approval of a contract between a municipal corporation and a public service company, made pursuant to Art. III, sec. 11 of the Public Service Company Law. We will meet that issue when it comes before us in a proper proceeding, asking for such revocation on facts averred in a complaint, which, it is claimed, justify or require such action, and warrant a conclusion that the contract was fraudulently entered into, none of which essential

matters are here present. We call attention, however, to the difference in the scope of the action of the Commission in granting a certificate of public convenience by which the recipient obtains the right to engage or continue in the business of a public service company and its action in approving a contract between a municipal corporation and a public service company.

As the learned counsel for the Public Service Commission points out in his brief, what the appellant really alleged as the grounds of his complaint was that the contract between the city and the United Gas Improvement Company was not being carried out in accordance with its terms, and the relief which he sought of the Commission was the enforcement of the contract as entered into, except that he also asked the Commission to modify the contract approved by it, so as to make it provide that the price of gas to the consumer should be fixed by the Public Service Commission, under the provisions of the contract, rather than by the gas commission which was created pursuant to its terms.

The City of Philadelphia acting by its mayor and city solicitor. filed a motion with the Commission to dismiss the complaint on the ground of want of jurisdiction in the Commission to consider it and grant the relief prayed for. The Philadelphia Gas Works Company filed a similar motion to dismiss on like grounds. They have been allowed to intervene as appellees and in this court urge that the action of the Commission be affirmed and the appeal dismissed.

We think that the plain provisions of the Public Service Company Law, as interpreted by the Supreme Court in Barnes Laundry Co. v. Pittsburgh, 266 Pa. 24, 109 A. 535, and by this court in Ferguson & McDowell v. P. S. C., supra, sustain the action of the Commission in dismissing the complaint for want of

jurisdiction. We shall not lengthen this opinion by restating the reasons therein set forth. But we refer to them as the basis of our present action. The City of Philadelphia is still the owner of its gas plant. The plant is being operated under the contract by an agent which receives a limited compensation proportioned to its efficiency, but with a fixed maximum. Whether the surplus over this sum shall go to the city by way of improvements to the plant or to the public by decreased rates for gas is a municipal problem, not a question for the Commission or even the courts.

The act expressly excludes municipal corporations from the public service corporations over which the Commission is given power of supervision and regulation, except as to certain matters which are not here involved. The provision requiring the approval of the Commission before contracts between a municipal corporation and a public service company become valid does not give the Commission power to enforce the contract or to supervise its execution or to regulate the facilities or service furnished by a city-owned plant to its customers or the rates which it shall charge them; or to change or modify a contract between the city and a public service company which it has approved. The State, acting through its general assembly, with the approval of the Governor, may see fit, sometime in the future, to subject the facilities, service and rates of city-owned public service plants to the supervision and regulation of the Public Service Commission, but up to this time it has not done so, but has, on the contrary, for the most part, expressly excluded them from the scope and purview of the Public Service Company Law and the regulation and supervision which it provides. Hence it follows that the forum for the enforcement of such a contract is just where it was before the passage of the Public Service

Company Law and the creation of the Public Service Commission,—in the courts, where relief may be had by one authorized to seek it if the contract is not being carried out according to its terms.

That the contract of February 8, 1926 may not be as favorable to the city in its terms as the thirty year lease of 1897 is wholly beside the point. The lease was about to expire. A new contract was in course of negotiation. Experience may have shown the lessee the unwisdom of renewing that lease. Instead of it a new contract was negotiated which is really an operating agreement, and which limits the compensation of the operating company to a fixed annual fee, with a limited extra payment based on its efficiency in management, and turns back all profits over and above that fee to the city either by improvements to the works or by lowering the price of gas to the public. The negotiation of such a contract on behalf of the city was the province of the city council and the mayor. It is their duty to enforce it, in strict accordance with its terms, through the proper channels. But once entered into, unless there was fraud in its procurement, which is not even hinted at, neither courts nor Commission can change it or set it aside, or terminate it except in the manner fixed by the contract.

The order of the Commission is affirmed and the appeal is dismissed at the costs of the appellant.