Graham *v.* Philadelphia et al.

514

Argued March 20, 1939.  Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Lloyd J. Schumacker,* of *Cohan & Schumacker,* for plaintiff.

*Joseph Sharfsin,* City Solicitor, with him *Herman N. Schwartz, G. Coe Farrier* and *Ernest Lowengrund,* Assistant City Solicitors, for defendants.

*Morris Wolf* and *Robert T. McCracken,* for intervenors.

*Edward B. Hodge, Jr.,* and *Hepburn & Norris,* for intervenor, under Rule 61.

PER CURIAM, March 24, 1939:

In order to aid the City of Philadelphia in its effort to balance the budget, which has been too long delayed, we make the following order, to be followed later by an opinion giving our views on the various questions propounded. We wish to emphasize what was said at oral argument that this court is not responsible for the wisdom of the plan or the policy to be employed in balancing the budget for the fiscal year 1939. Our sole duty is to pass on the legal questions involved, which we now do.

We hold that the City has the power to sell and assign the rentals payable under the operating contract or lease with the Philadelphia Gas Works Company; that the transaction does not constitute an increase of debt in contravention of Article IX, sections 8 and 10 of the Constitution of Pennsylvania; that it is not necessary to secure the approval of the Public Utility Commission to the lease contract or the proposed contract to sell to the Philadelphia Corporation; that the City has the power to contract to pay from current revenues any deficit in the rentals so sold or assigned occasioned

by any act of the Assembly regulating rates for gas either directly or through a commission. Such current revenues to pay such deficits may be obtained by a special tax to be levied by future councils of the City. The City is empowered to apply the proceeds of the transaction now before us to all the purposes specified in the record now before the court.

The City of Philadelphia does not by this transaction and cannot under it assume any direct or indirect liability in the nature of a debt that might be assessed against either the property, or the revenues of the City, other than the possible deficit that might result from future legislation, to be paid from current revenues raised by the special tax.

As the above answers all questions necessary to the constitutional and legal validity of the proposed transaction, we do not deem it necessary to decide whether the rates for gas from the City-owned Gas Works are subject to regulation by the Pennsylvania Public Utility Commission, or whether the General Assembly of the Commonwealth of Pennsylvania can, during the period of the assignment, of itself regulate or appoint a governmental agency to regulate these rates.

Bill dismissed.

OPINION BY MR. CHIEF JUSTICE KEPHART, May 8, 1939:

The City of Philadelphia is owner in fee of the Gas Works, free and clear of any encumbrances. In 1897, the Works were leased for a term of thirty years to the United Gas Improvement Company under an operating agreement. On January 1, 1928, a new lease with the same corporation became effective, subject to termination, on certain conditions, on December 31, 1937, or at any ten-year period thereafter. This lease was assigned by the United Gas Improvement Company to the Philadelphia Gas Works Company with the consent of the City. The lease provided for an annual rental to be paid to the City of $4,200,000, subject to the terms

of the contract. A new lease from January 1, 1938, to December 31, 1947, was agreed on, containing the same rental provision.

At the time of preparing its budget for 1939, the City owed approximately $39,000,000 as an accrued "floating deficit," of which $5,625,428 was for outstanding capital mandamuses with interest thereon. Of this sum about $5,000,000 represents capital charges well within the debt limit, created under valid authority, which may be refunded in City bonds, notwithstanding the limitation on the City's general borrowing capacity. *(Commonwealth ex rel. v. Cannon,* 308 Pa. 321.) To retire its floating deficit, and balance the current budget, the City proposes to assign the rentals to be received by it from the Gas Works lease.

On February 27, 1939, Council amended the 1938 gas lease-agreement so as to fix the termination of the lease as of the end of the term for which the rentals would be assigned, or no later than December 31, 1958. On March 13th, the Philadelphia Corporation submitted a modified proposal, offering $50,000,000 for the assignment of the rentals covering a period of approximately seventeen years from March 15, 1939, or longer if necessary to produce an aggregate return of $73,500,000 to the Corporation, with interest at 4% on rentals due and unpaid for any year. All the rights of the City under the lease are to be assigned, and the City is to agree not to dispose of, lease, or encumber the Gas Works during that time. Any insurance proceeds received by the City are to be applied to the improvement of the Gas Works within a period of six months, or paid to the Philadelphia Corporation as additional security for the payment of the aggregate return.

The modified proposal states that if, "by legislative regulation of gas rates," the amount received by the Philadelphia Corporation on August 1, 1955, shall be less than $73,500,000, the City shall levy a special tax,

appropriating all the revenue therefrom to the payment of the deficiency.

The City must appropriate approximately $39,000,000, or as much thereof as may be necessary, of the proceeds of the assignment to the payment of the City's accrued deficit. The balance is to be applied to current expenses for the year 1939, and for budgetary purposes in 1940.

While this, in substance, is the proposal, it may ultimately be modified within the confines of the structure above indicated. As the City is about to accept it generally, the parties responsible for the performance of the lease having consented to the assignment, it is desirous that all legal questions raised be settled.

Petitioner, a taxpayer, invoking the original jurisdiction of this Court, seeks to enjoin the proposed assignment on constitutional and other grounds, principally that the transaction would effect an increase of the municipal indebtedness beyond the limitation of section 8, and in violation of section 10, of Article IX. The Philadelphia Citizens Committee, having obtained leave to intervene, supported the constitutionality of the assignment in part and opposed it in part. On March 24, 1939, this Court dismissed petitioner's bill for the reasons which will be now more fully discussed.

The Philadelphia Gas Works is owned by the municipality in its proprietary or business capacity: *Philadelphia Gas Works Co. v. Philadelphia,* 331 Pa. 321, 344; *Baily v. Philadelphia,* 184 Pa. 594; *Wheeler et al. v. Philadelphia et al.,* 77 Pa. 338, 355; *Western Saving Fund Society, etc., v. Philadelphia et al.,* 31 Pa. 175; *Ibid.* 185. The Act of March 11, 1789, 2 Sm. L. 462, section 11, provides that the City may "grant, bargain, sell, alien and convey, mortgage, pledge, charge and encumber, or demise and dispose of" its goods, chattels, lands, tenements and hereditaments. The Act is still in force. *Wentz v. Philadelphia et al.,* 301 Pa. 261, 267, citing *Philadelphia v. Brabender,* 201 Pa. 574; *Com-*

monwealth v. Walton, 182 Pa. 373. And in Williams
v. Samuel et al., 332 Pa. 265, 276-277, it was held that
under it the City would have power to dispose of its
water works and sewerage system, both of which are
also owned by the municipality in its proprietary capac-
ity. The right of the City to lease the Gas Works was
established in Baily v. Philadelphia, 184 Pa. 594. If the
City may sell or lease the Gas Works, there is obviously
no impediment to the assignment of the rentals derived
from the lease thereof. This is conceded by both the
petitioner and the intervenors and requires no further
discussion.

Petitioner contends, however, that the transaction
will create an indebtedness beyond the City's constitu-
tional limitation. The intervenors also urge the same
result as to the proposed transaction in so far as any part
of the proceeds is applied to current expenses.

It is argued that the City by selling the future rentals
is disposing of future income to which it is now entitled,
and is, in effect, borrowing on futures and thereby cre-
ating a debt. A debt within the meaning of the Constitu-
tion is created when an obligation is undertaken "to pay
in the future for consideration received in the present":
Keller v. Scranton, 200 Pa. 130. It imports a present
and actual creditor as an incident to the transaction.
The transaction before us does not in any conceivable as-
pect constitute borrowing; here there is an assignment
of gas rentals,—an outright sale of an obligation due
the City under the lease, without any liability to the City
thereon except a remote contingent future obligation to
arise only upon legislative interference, which will be
discussed later.

In Kelley v. Earle et al., 325 Pa. 337, we considered a
lease entered into by the State for a long term which
was alleged to create by implication a debt either pres-
ently or in the future. We held that such transaction
did not create a debt, nor was any indebtedness in-
curred by the State, where the creditors or the trustee

for the bondholders of the Authority could not take the property of the Authority or of the State, or look to the general fund or other assets of the State for the payment of the bonds. And, in *Tranter v. Allegheny County Authority et al.,* 316 Pa. 65, it was said at p. 84: "We cannot consider the obligation as the debt of the county, unless it is a debt which the county has agreed to pay or can be required to pay." It was pointed out at page 85: "The bondholders cannot call upon the public treasuries to contribute; no county or municipal property can be taken for the debt, because the bondholders have agreed to look to a special fund for payment to be raised in the manner provided." A debt, therefore, within the constitutional definition does not contemplate possible obligations accruing by Act of God or possible laws to be passed in the future. It does contemplate an existing obligation presently enforceable against the property or funds of the municipality generally, or an obligation presently existing enforceable in the future. In the event of a default in payment of any of the rentals, no property of the City, real or personal, can be taken for principal and interest. The default would be that of the lessee, the Gas Works Company, not the muncipality, and the City assumes no obligation or liability therefor. Under paragraph 3(e), the assignee has no right to recover any part of such defaulted sums from the general funds or property of the City, from its general tax levy, or by *attachment* or *sale* of any city property, including the Gas Works. Nor is the City required to pay out of any special tax, any deficit arising in this manner.[1]

---

[1] Paragraph 3(e) of the proposal expressly states:

"The right of the Corporation to receive the aforesaid sum of $73,500,000, plus the Interest, shall be restricted solely to the proceeds from the operation of the Gas Works and the proceeds of insurance thereon or condemnation thereof and the proceeds of the special tax provided for by the aforesaid paragraph 3(d); *and the Corporation will have no right to recover any part of said*

It must be noted definitely, as stated above, that the proposed transaction is an assignment of gas rentals, which does not constitute an increase of indebtedness in contravention of Article IX, Sections 8 and 10, of the Constitution of Pennsylvania. Yet the proposed contract does evidence the right of the assignee to receive the sum of $4,200,000 per year under the terms and conditions of the lease agreement between the City of Philadelphia and the Philadelphia Gas Works Company, and the City of Philadelphia is under obligation to perform such acts on its part as shall be required under that contract to provide for the payment of such annual rentals to the assignee. But, the City is in no sense a guarantor for the payment of the aggregate sum of $73,500,000.

Section 3(d) of the proposal, reads as follows: "(d) If on August 1, 1955, *by reason of legislative regulation of gas rates,* the amounts theretofore received by the Corporation from the Philadelphia Gas Works Company and/or from the City and/or from the operation of the Gas Works under the aforesaid paragraph 3(c), plus the amounts entitled to be received from the said sources during the succeeding twelve months shall aggregate less than $73,500,000, plus the Interest, the City will forthwith (1) levy a special tax to provide for the payment to the Corporation of such deficiency out of current revenues of the City, and (2) irrevocably appropriate to such payment all revenues received by the City from such tax."

The City by this subsection does not pledge its general funds or property to meet this contingent obligation. The City promises to levy a special tax and thereby create a special fund for the payment of the deficiency. The Corporation expressly has no right of action against any property or funds of the City. This position clearly

---

*sums from the general funds or property of the City or from its general tax levy or by attachment or sale of any property of the City, including the Gas Works.*

distinguishes the present case from *Lesser v. Warren Boro.,* 237 Pa. 501; *Brown et al. v. City of Corry et al.,* 175 Pa. 528; *McKinnon v. Mertz,* 225 Pa. 85; and *Mc-Anulty v. City of Pittsburgh,* 284 Pa. 304. In each of these cases the property or general revenues of the municipality were liable for the performance of its contractual obligations. In the cases of *Village of East Moline v. Pope,* 224 Ill. 386, 79 N. E. 587, and *Panhandle Construction Co. v. City of Spearman,* 83 S. W. (2d) 425, (Tex. Civ. App.) cited by petitioner, the municipality assumed liability for *any* failure of the source of payment designated to discharge the obligation. It cannot be too strongly emphasized that here the City does not assume any of the obligations of the lessee of the Gas Works either directly or secondarily.

The liability of the City under paragraph 3(d) can arise only if there is a deficit, brought about by legislative regulation of the rates, thereby reducing the rentals to the City. The remoteness of the contingency is obvious. The legislature has never regulated the rates of this municipally-owned gas works; the Public Service Commission was expressly denied the right to do so under previously existing legislation, *(Barnes Laundry Co. v. Pittsburgh et al.,* 266 Pa. 24; *Wilson v. Public Service Commission,* 116 Pa. Superior Ct. 72; *Ferguson and McDowell v. Public Service Commission,* 82 Pa. Superior Ct. 238); the present Public Utility Act of May 28, 1937, P. L. 1053, makes no provision for such regulation of rates by the Public Utility Commission; the legislature at its present session has excepted from rate regulation by the Commission any utility owned by a municipal corporation and operated within its corporate limits (Act No. 11, March 21, 1939). While there is the contingency that the legislature might in the future enact such laws, if it does so, such rate regulations must permit a fair return on a fair valuation of the property involved to be constitutional under our decisions.

At the normal rental of $4,200,000 per annum, the sum required by the assignee should be realized entirely within the prescribed period.

Bearing these considerations in mind, subsection 3(d) cannot possibly be construed to give rise to a present liability of the City or to create a presently existing debt. To illustrate the force of this observation: If the City of Philadelphia were solvent within the constitutional meaning, and wished to incur a bonded indebtedness, in making a statement of its assets and liabilities, it would be unable to list any figure representing its liability under this clause of the proposal relating to a deficit. The mere possibility of future liability to arise by reason of legislation that may be enacted, is so remote and contingent, that it does not create a present debt. This is apparent, for if it were otherwise, every authorized indebtedness of a municipality would have to be considered subject to the possibility of future legislative enactment, taking from the municipality a part of its property, diverting a portion of its property to uses not taxable, or lowering assessments. This Court has held that such contingencies cannot affect the validity of bonds issued or authorized: *Duane v. Philadelphia et al.,* 322 Pa. 33. The constitutional provision relating to debt and indebtedness contemplates the creation-of a present obligation, payable in the future, importing a present actual creditor as a necessary incident of the transaction. Save for a necessary and practical exception illustrated in *Duane v. Philadelphia et al.,* 322 Pa. 33, and *McGuire v. Philadelphia (No. 1),* 245 Pa. 287, no debt is created until a positive obligation is assumed: See *City of Erie's Appeal,* 91 Pa. 398, 402; *Brooke v. City of Philadelphia,* 162 Pa. 123, 128.

The City has no present obligation under this clause. If the contingent deficiency thus explained exists on August 1, 1955, its payment is to be provided for by a special tax,—current revenue. This Court has repeatedly held that the incurring of an obligation to be paid

out of current revenues does not effect an increase in indebtedness within the meaning of the Constitution. See *Kelley v. Earle*, 325 Pa. 337; *Tranter v. Allegheny County Authority*, 316 Pa. 65; *Athens Nat'l Bank v. Ridgebury Twp.*, 303 Pa. 479; *Jackson v. Conneautville Boro Sch. Dist.*, 280 Pa. 601; *Wade et al. v. Oakmont Borough et al.*, 165 Pa. 479; *City of Erie's Appeal*, 91 Pa. 398. The undertaking of the City under subsection 3(d) is to be distinguished from the incurring of an obligation to pay a fixed sum in the future which would create an immediate debt, though not payable until a future date. Here there will be no obligation at all until the remote contingency occurs; it may never occur. A comparison of this situation with the situations involved in *Lesser v. Warren Borough*, 237 Pa. 501; *McAnulty v. City of Pittsburgh*, 284 Pa. 304; *McKinnon v. Mertz*, 225 Pa. 85,. and *Brown v. City of Corry*, 175 Pa. 528, demonstrates that the rule there announced has no application.

The case of *Keller v. Scranton*, 200 Pa. 130, likewise is distinguishable. There it was held that an assumption by the municipality of an obligation to pay unliquidated damages to the owners of property abutting a proposed viaduct, was a debt in the constitutional sense. In that case the court below found as a fact that pecuniary damage *would* result, and was able to approximate the amount with certainty to hold that the constitutional limitation would be exceeded. In the present case there is not only no certainty that the obligation will arise, but on the contrary, it is highly improbable that it will arise.

Petitioner concedes that if the transaction does not create a debt, the City may apply the proceeds to any use, whatsoever, beneficial to its inhabitants. The intervenors, however, contend that no part of the proceeds of the assignment may be applied to current expenses. This is the principal ground of their attack on the modified proposal.

Intervenors suggest that the City Charter Act of June 25, 1919, P. L. 581, *by implication,* prevents the use of the proceeds for current expenses, intimating a requirement for the municipality of a pay-as-you-go policy. The Charter Act does not contain any provision to limit or restrict the application of receipts from the sale of corporate property by a municipality.

As this Court said in *Woodward v. Philadelphia,* 333 Pa. 80, Article XVIII of the Charter Act supplies comprehensively all the considerations necessary for a complete municipal budget. Receipts of the City are placed in three categories: "(a) receipts from taxation; (b) money proposed to be borrowed and (c) receipts from sources other than taxation and loans, hereinafter designated as miscellaneous receipts." It is clear this Article makes the proceeds of the sale of municipal assets fall into the category of "miscellaneous receipts." The use of the word "current receipts" in the last sentence of the first paragraph of Section 1 of the Article (providing that the Mayor's statement shall indicate "which of such liabilities and expenditures should be met from current receipts and which should be met from loan funds,") will not support the construction contended for that the legislature intended only current receipts from taxation to be available for current expenses. It is also contended that this Court in *Woodward v. Philadelphia,* supra, used the words "receipts" and "revenue" synonymously and that therefore "miscellaneous receipts" means "miscellaneous revenues" or receipts from taxation. If "miscellaneous receipts" refers to receipts from taxation, there would be but two classes of receipts available for budget purposes. The legislature separated "miscellaneous receipts" from "receipts from taxation." Furthermore, in the passage quoted by intervenors from the Woodward case, the term "revenue" was used only with reference to receipts from taxation.

The case of *Corporation for the Relief of Widows, etc. v. Philadelphia,* 317 Pa. 76, holding that the purchase price of the Delaware River Bridge could not be applied to current expenses of the City, is not controlling here. There the City was obligated to repay the outstanding bonded indebtedness incurred for the erection of the bridge, a capital asset, with the proceeds of its sale. No such situation is here presented. The Act of May 16, 1929, P. L. 1773, as amended by the Act of May 28, 1937, P. L. 1010, does not apply.

There is no legislative or other legal barrier to the use of these proceeds for current expenses, and there is authority for holding that they may be so applied. The rentals from the Gas Works have always been regarded as miscellaneous receipts, available for current expenses. In *Shirk v. Lancaster City,* 313 Pa. 158, 173, we held that a municipality may apply receipts from the operation of its water works to any legitimate purpose. If, therefore, the rentals themselves may be used for current expenses, the proceeds from the assignment, which represent the rentals, are available for the same purpose.

Another objection urged by petitioner to the proposed assignment is that Section 3(d) of the proposal purports to bind future Councils of Philadelphia to levy a special tax upon the happening of the contingency referred to above. It is argued that taxation is a governmental function and that the City in its proprietary capacity cannot validly bind itself to perform a governmental act in the future. Petitioner cites cases from other jurisdictions,[2] holding that future taxing power cannot be presently exercised so as to bind legislative successors.

Whatever may be the rule in other states, it has been positively established in this jurisdiction that legislative bodies may enter into transactions or agreements

---

[2] *Westminster Water Co. v. Westminster,* 98 Md. 551, 56 Atl. 990; *Billeter & Wiley v. State Highway Commission,* 203 Ky. 15, 261 S. W. 855; *Davis v. Wayne County Court,* 38 W. Va. 104, 18 S. E. 373.

binding upon their successors which may require the levying of a tax in the future.[3]

The City, in dealing with the Gas Works, is acting in a business capacity and its contracts relating thereto are binding upon future City Councils: *Baily v. Philadelphia*, 184 Pa. 594. There are so many illustrations of this rule in reported cases that to enumerate them would be superfluous. But the Gas Works is unquestionably a public enterprise and we have held that expenditures on or about such municipal business improvements can be met by taxation (see *Shirk v. Lancaster City*, 313 Pa. 158, 169) just as receipts therefrom can be devoted to current governmental purposes. The gas works, water works, sewerage systems, electric light plants and other business enterprises of a municipality need not be self-sustaining. Therefore if the City may validly appropriate tax monies to the expenses of such enterprises, it may enter into contracts the effect of which may be to give rise to the necessity of a tax levy by future Councils.

The last question remaining is whether the State Public Utility Commission must approve the lease and the assignment. The Act of May 28, 1937, P. L. 1053, Section 911, provides:

"No contract or agreement between any public utility and any municipal corporation shall be valid unless filed with the Commission at least thirty days prior to its effective date: Provided, That upon notice to the

---

[3] See *Tranter v. Allegheny County Authority*, 316 Pa. 65; *Kelley v. Earle*, 325 Pa. 337; and see *Commonwealth ex rel. v. Select and Common Councils of Pittsburgh*, 34 Pa. 496, 507, 510; *Ohlinger et al. v. Maiden Creek Twp. et al.*, 312 Pa. 289, 293; *Commonwealth ex rel. v. Commr's of Allegheny County*, 32 Pa. 218; *Lehigh Coal & Navigation Company's Appeal*, 112 Pa. 360; *Investors Realty Co. v. Harrisburg*, 82 Pa. Superior Ct. 26, 40; *Douglas v. McLean*, 25 Pa. Superior Ct. 9, 12; *Commonwealth ex rel. v. Commr's of Allegheny*, 37 Pa. 277, 290; *Commonwealth ex rel. v. Perkins et al.*, 43 Pa. 400; *Morgan v. Commonwealth*, 55 Pa. 456.

municipal authorities, and the public utility concerned, the Commission may, prior to the effective date of such contract or agreement, institute proceedings to determine the reasonableness, legality, or any other matter affecting the validity thereof. Upon the institution of such proceedings, such contract or agreement shall not be effective until the Commission grants its approval thereof . . ."

Section 920 provides:

"The Commission shall have power and authority to vary, reform, or revise, upon a fair, reasonable, and equitable basis, any obligations, terms, or conditions of any contract heretofore or hereafter entered into between any public utility and any . . . municipal corporation, which embrace or concern a public right, benefit, privilege, duty, or franchise, or the grant thereof, or are otherwise affected or concerned with a public interest and the general well being of the Commonwealth."

The proposed lease and contract of assignment are not within these sections. The lease is an operating agreement *(Phila. Gas Works v. Phila. et al.,* 331 Pa. 321, 344), and the proposed assignment is a sale of rentals therefrom. The legislature did not intend every contract between a municipality and public utility to be subjected to the approval of the Commission. The power of the Commission to revise such contracts is limited to matters within its jurisdiction: *Citizens Passenger Ry. Co. v. Public Service Commission,* 271 Pa. 39; *New Street Bridge Co. v. Public Service Commission,* 271 Pa. 19. Since the Commission has no power to regulate the rates of the municipally owned gas works *(Barnes Laundry Co. v. Pittsburgh et al.,* 266 Pa. 24; *Wilson v. Public Service Commission,* 116 Pa. Superior Ct. 72; *McDowell v. Public Service Commission,* 82 Pa. Superior Court 238; Act No. 11, March 21, 1939, section 2) ; nor to determine the rentals to be paid to the City *(Citizens' Passenger Ry. Co. v. Public Service Commission,* 271 Pa. 39; *New Street Bridge*

*Co. v. Public Service Commission,* 271 Pa. 19), nor to interfere with the property of the City, which would include the right to dispose of the rentals (see Act of March 21, 1939, P. L. 10, section 1), it could not revise the lease or assignment agreements in any of these particulars. How far the legislature may subsequently invade this field, under constitutional limitations, we expressly leave open.

For the reasons above stated, we reaffirm our previous order, filed March 24, 1939, dismissing the bill.