## Gemmill *v.* Calder et al.

Argued November 28, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*A. Sidney Johnson, Jr.,* with him *Robert B. Greer,* of *Greer & Johnson,* for plaintiff.

*Ellwood J. Turner* and *Clarence G. Myers,* with them *Duane, Morris & Heckscher,* for defendants.

PER CURIAM, December 5, 1938:

We are unanimously of the opinion that the Municipal Authorities Act of June 28, 1935, P. L. 463, as amended by the Act of May 20, 1937, P. L. 739, as it relates to the Central Delaware County Authority, is constitutional, providing, as it does, for self-liquidation projects, and the levying of an adequate sewer charge. An opinion will be later filed expressing our views.

Bill dismissed.

OPINION BY MR. JUSTICE SCHAFFER, December 9, 1938:

We assumed original jurisdiction of this proceeding because of the exigency which exists in the matter to which it relates. Unless the contemplated enterprise

can be put under way before January 1, 1939, it will be impossible of accomplishment.

At large expense a number of the municipalities in the County of Delaware have constructed a sewer system. Sewers are owned by municipalities in their proprietary capacity, not governmentally: *Williams v. Samuel*, 332 Pa. 265. One of the main purposes of the system is to free the creeks, flowing through the County, from pollution. That the municipalities shall do so is the mandate of the State. In order to make the system effective, owing to geographical conditions it is ncessary to erect a pumping station to force the sewage from four of the municipalities over a height of land so that it may reach a large effluent line emptying into the Delaware River;—ultimately it is proposed to establish in connection with this sewer a disposal plant wherein the sewage will be so cared for that it will not reach the river. To build the pumping station and for other purposes connected with the sewer system, there has been created under the "Municipality Authorities Act of 1935," approved June 28, 1935, P. L. 463, as amended by the Act of May 20, 1937, P. L. 739, 53 PS Sec. 2900f et seq., an authority,—"Central Delaware County Authority." Eight municipalities joined in its creation, one of them the Borough of Swarthmore. The estimated cost of the pumping station is $75,600, of which $30,600 will be contributed by the Federal government. The remainder will be provided by a bond issue of the Authority which the payments made by the municipalities will discharge in twenty-six years.

This bill in equity was brought by a taxpayer of the Borough of Swarthmore, challenging the right of that borough to enter into a contract with the Authority to build the pumping station and to contribute to the cost thereof. Only four of the eight municipalities purpose entering into the contract; owing to the lay of the land the pumping station service will not be required by the other four.

The agreement provides that the Authority shall erect, maintain and operate the pumping station and shall pay all the costs and charges of maintenance. The four municipalities agree to pay, either from current revenues or from sewer rentals, an annual sum designated rental, for the services rendered in connection with the erection and operation of the pumping station. These annual rentals are to be utilized for the purpose of paying interest and principal of the bonds issued by the Authority and for the maintenance of the pumping station. The amount of the rentals is to be based upon the volume of sewage delivered to the pumping station by each municipality. In the case of the Borough of Swarthmore the sum would amount annually to $1,034.13.

In the event the pumping station is destroyed, the Authority agrees to rebuild it and the municipalities covenant to pay further rentals in an amount sufficient to pay for the cost of rebuilding.

If the payments specified in the contract are not made by the municipalities, it is provided that the Authority may take "such legal action to collect the same as it may deem necessary." The municipalities agree to provide in their annual budget a sum equal to the amount to be paid to the Authority during each current year.

The validity of the contract is attacked on the ground, among others, that it violates Article IX, Section 10, of the Constitution of Pennsylvania, which provides: "Any . . . municipality incurring any indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years." This section of the Constitution has no application. It is expressly provided that the obligations of the Borough of Swarthmore under the agreement are to be met from current revenues. A contract which can be fully met from current revenue is not within the prohibition of this section: *Spangler v. Gallagher,* 182 Pa. 277, 37 A. 832; *Scranton*

*Electric Co. v. Old Forge Boro.*, 309 Pa. 73, 163 A. 154. See also *Trantor v. Allegheny Co. Authority*, 316 Pa. 65, 173 A. 289; *Kelley v. Earle*, 325 Pa. 337, 190 A. 140. Under the present financial condition of Swarthmore, the payments are entirely within the borough's capacity to pay from current revenue. The borough, under its reserve power of taxation, can increase its annual current revenues by a sum twenty times greater than the $1,034.13 annual payment the agreement calls for. The present tax rate of the borough is 10.75 mills. It has the power to increase this levy to 15 mills. On the existing assessment, should this be done, an annual revenue of $23,831 above the present revenue would be realized. It is, therefore, manifest that the payment can be met from current revenues. In addition, the borough has the power to charge sewer rentals which it does not now impose (Act of May 14, 1937, P. L. 630, 53 PS Sec. 1030). The decree which we shall enter is based upon the assumption that such rentals will be imposed to meet the required payment and be pledged to the Authority in order that the project may be self-liquidating.

It is objected that the remedies given the Authority and its bondholders in the event of default are beyond the powers of the municipality to assume. The agreement provides that, upon default, the Authority "may at its option take such legal action to collect the same as it may deem proper," with interest at the rate of six per cent, an attorney's fee and a penalty of ten per cent. This provision must be eliminated from the contract; our determination is based upon the fact that this is done. In the event of default, the remedy of the bondholders will be limited to the right to take over the property and to operate it, making reasonable charges for the service rendered: *Trantor v. Allegheny Co. Authority*, supra; *Kelley v. Earle*, supra. In so far as the agreement attempts to secure additional rights for the Authority or the bondholders, it could not be sustained.

Section 4 of the "Municipality Authorities Act of 1935," as amended by the Act of May 20, 1937, P. L. 739, 53 PS Sec. 2900i, provides: "The Authority shall have no power at any time or in any manner to pledge the credits or taxing power of the Commonwealth of Pennsylvania or any political subdivisions, nor shall any of its obligations be deemed to be obligations of the Commonwealth of Pennsylvania, or any of its political subdivisions, nor shall the Commonwealth of Pennsylvania, or any political subdivision thereof, be liable for the payment of principal or interest of such obligations."

It is further contended that the effect of the Municipality Authorities Act and of the agreement to be executed pursuant thereto is to take plaintiff's property without due process of law. As before stated, the Authority was created at the instance of eight municipalities. The present agreement is to be executed by only four of them. The pumping station is to be erected and operated for the benefit and use of these four only. It is the plaintiff's position that the agreement makes no provision for the disposition of the property at the termination of the agreement and that by reason of this fact the four contracting municipalities will relinquish a valuable asset to the other four which took part in organizing the Authority. Such is not the case. Section 14 of the "Municipality Authorities Act," as amended by the Act of 1937, supra, 53 PS Sec. 2900s, expressly provides that when the obligations of the Authority have been paid in full, the property may pass to the municipalities. In the present situation, this would be the four contracting ones. There is nothing in the act to indicate that the property is to be conveyed to all the municipalities creating the Authority. The property would pass only to those that contributed to the cost of the improvement. Further, Section 18 of the Act, as amended, gives the municipalities the right to take over the property from the Authority. This right is, likewise, limited to the contracting municipalities alone.

Finally, plaintiff contends that the obligation assumed by the municipalities to rebuild the pumping station if destroyed exceeds the power of the municipality. It is contended that this is in effect a contract of insurance. There is no merit in this contention, because payments would be made as the agreement provides, in yearly sums from current revenue or sewer rentals. We see nothing in what the borough undertakes to do which violates the Constitution or exceeds the municipality's powers.

The bill is dismissed. Costs to be paid by the Authority.