Greenhalgh, Appellant, *v.* Woolworth et al.

544

Argued January 10, 1949. Before MAXEY, C. J., DREW, STERN, PATTERSON, STEARNE and JONES, JJ.

*Richard B. Tucker, Jr.*, with him *Patterson, Crawford, Arensberg & Dunn*, for plaintiff, appellant.

*G. Roy Keitzer* and *Sidney M. Ruffin*, with them *Theodore L. Hazlett, Jr.*, and *Burgwin, Churchill, Ruffin & Hazlett*, for defendants, appellees.

*John B. Nicklas, Jr.*, with him *Henry S. Moore* and *McCrady & Nicklas*, for North Allegheny Joint Schools, amicus curiæ.

OPINION BY MR. JUSTICE JONES, March 21, 1949:

The State Public School Building Authority, a Pennsylvania body corporate (hereinafter referred to as Authority) and the School District of the Borough of West Mifflin, a political subdivision located in Allegheny County (hereinafter referred to as School District), were about to enter into a *contract to execute a lease* and, in due course, a *lease* of a public school building which the Authority was to construct and own and the School District was to hold and use, as lessee, at a fixed annual rental for the proposed term of the lease.

The plaintiff, a resident and taxpayer of the School District and a resident, citizen and taxpayer of the Commonwealth, as well, brought this suit to enjoin the execution of the instruments above mentioned, asserting that the statutory provisions under which the Authority was assuming to act were, and the substantial effect of the School District's threatened participation would be, violative of certain express constitutional restraints. After the bill of complaint had been filed (all other requirements of Equity Rule 32 being satisfied), the material facts were brought upon the record in the form of a case stated agreed to by respective counsel for all parties litigant. Accordingly, none of the facts is in dispute nor are any of the lower court's findings questioned.

The learned chancellor overruled the plaintiff's contentions and entered a decree *nisi* dismissing the bill which action the court en banc duly confirmed. From the final decree entered, the plaintiff brings this appeal.

In addition to the original parties to the record, the North Allegheny Joint Schools (composed under articles of agreement entered into pursuant to provisions of the School Code of May 18, 1911, P. L. 309, as amended of the School Districts of Bradford Woods Borough, Franklin Township, Marshall Township, McCandless Township and Pine Township, all of Allegheny County) has appeared as *amicus curiæ* and, by counsel,

has filed brief and made oral argument, by allowance of this court under Rule 61, as a party interested in the questions involved on this appeal.

The Authority was created a body corporate and politic by the State Public School Building Authority Act of July 5, 1947, P. L. 1217, 24 PS §791.1 et seq and constitutes a public corporation and governmental instrumentality. The purposes of the corporation's creation, as defined by Section 4 of the Act, are the "constructing, improving, maintaining and operating [of] public school buildings, and furnishing and equipping the same for use as public schools, as a part of the public school system of the Commonwealth of Pennsylvania under the jurisdiction of the Department of Public Instruction."

In furtherance of the purposes of the Authority's creation and in order that school districts throughout the Commonwealth might avail themselves of the facilities to be afforded by the Authority, Section 5 of the Act conferred the following express powers: "Section 5. Contracts to Lease and Leases by School Districts from Authority.—Any school district within the Commonwealth shall have power and authority, with the approval of the Governor, to enter into contracts with the Authority to lease as lessee from the Authority any school building, and the furnishings and equipment thereof constructed or improved by the Authority, for a term, with respect to each not exceeding thirty (30) years, at such rental or rentals as may be determined by the Authority, and upon the completion of said school building and the furnishings and equipment thereof, the school district shall have power and authority, with the approval of the Governor, to lease as lessee any school building and the furnishings and equipment thereof completed by the Authority, for a term, with respect to each not exceeding thirty (30) years, at such rental or rentals as may be determined by the Authority."

The questions involved, as stated by the appellant in his brief, are substantially those posed by the case stated for the trial court's determination as follows: "(a) Are the 'Contract to Execute a Lease' and the 'Lease' as authorized by the State Public School Building Authority Act a subterfuge to permit the School District to acquire a capital asset, the cost of which exceeds its two (2%) per cent constitutional debt limitation? (b) Are the obligations to be assumed by the School District under this lease an increase of its indebtedness in violation of its constitutional debt limit if the current receipts to be used to meet such obligations include the annual appropriation received by the School District from the State? (c) Are the obligations to be assumed by the School District under the lease an increase of its indebtedness in violation of its constitutional debt limit on the theory that the project is not 'self liquidating' since the School District will make no charge for its use and must pay all obligations under the lease from its current receipts? (d) Is the State Public School Building Authority Act of 1947, P. L. 1217, unconstitutional as authorizing an increase of indebtedness of the School District in violation of Article IX, Sections 8 and 10, of the Constitution of the Commonwealth of Pennsylvania?"

Section 8 of Article IX of the Constitution places a limit upon the debt of any municipality (a school district *inter alia*) of seven per centum of the assessed valuation of the taxable property in the municipality and contains a further prohibition against the incurring of a new debt or the increase of an existing indebtedness to an amount exceeding two per centum of the assessed value of the taxable property in the municipality without the consent of the electors thereof obtained at a public election. Section 10 of Article IX requires that at or before the incurring of any such indebtedness, the municipality shall "provide for the collection of an

annual tax sufficient to pay the interest and also the principal thereof within thirty years."

The School District having requested the Authority to undertake the construction of a school building (which the School District would lease from the Authority) within the territorial limits of the district at a cost of $450,000, the latter took appropriate official action for the purpose of entering into a contract with the School District for the execution of such a lease. Under the proposed contract, the Authority was to undertake the construction of the project which was to be paid for by the Authority with funds derived from the issuance and sale of its own bonds. Upon completion of the school building, the Authority, as lessor, and the School District, as lessee, were to execute a lease in form as attached to the proposed contract, the contract being conditioned upon the Authority's ability to complete the project for not more than $450,000 and to sell its bonds at an interest rate not exceeding three per cent. The lease was to be for a term of thirty years and was to provide for the surrender of the premises by the School District at the end of the term or upon any earlier termination of the lease. The annual rental was to be $24,110. Both the Authority and the School District were to agree, according to the lease form, that the rent should be assigned to the fiscal agent, to be named in the Authority's bond issue resolution, as security for the bonds to be issued by the Authority. The lease would require the School District, at its own expense, to carry insurance on the school building and to maintain it in good condition and repair.

The total rent payable by the School District over the thirty-year term of the lease would be sufficient to pay the interest and principal of the Authority's bonds at maturity and also to pay the portion of the Authority's administrative expenses allocable to the particular project. The budget estimates of the School District's

receipts from all sources, for the current fiscal year, include an appropriation of $100,000 from the State. The assessed value of the taxable property in the School District is $24,661,036 whereon the School District (third class) levies at present a tax at the rate of twenty-four mills under the Act of May 18, 1911, P. L. 309, Art. V, Sec. 537, 24 PS § 592. By virtue of this same statutory power, the School District may increase its tax rate to twenty-five mills; and, on the basis of present collection experience and the discount rate, an increase of one mill in the tax levy would produce $23,442.78 additional revenue (only $667.22 short of the proposed annual rental requirement). Moreover, the School District has not levied any additional millage, as it is authorized by law to do (Sec. 1210, cl. Twenty-four, of Art. XII of the Act of 1911, as amended, 24 PS § 1186), for the payment of minimum salaries and increments of its teaching and supervisory staff which sums now amount to $267,350 annually, or eleven times the yearly rental under the proposed lease from the Authority (cf. *Gemmill v. Calder*, 332 Pa. 281, 285, 3 A. 2d 7), and are taken care of by the School District in its budget as ordinary operational expenses. The School District can make no charges for the services to be supplied by the new building and will derive no revenue from its operation wherewith to pay rentals due the Authority. Such rentals will be paid *only* from the current receipts of the School District.

The principles laid down by this Court in *Kelley v. Earle*, 325 Pa. 337, 190 A. 140, require that the appellant's contentions be rejected in their entirety. In a legal sense, the proposed lease is indistinguishable from the lease involved in the *Kelley* case, cit. supra. The argument that the procedure contemplated will work a subterfuge whereby the School District will acquire a capital asset in violation of constitutional inhibitions

lacks any substantial basis. In *Kelley v. Earle* it was argued, in like manner (p. 341), "that the agreement in effect was the purchase of a capital asset by installments. . . ." But, it was there pointed out (p. 344) that the leases in controversy "will be 'straight' leases to the Commonwealth and at the end of the 30 year period, the title and ownership of the project and ground will be in the General State Authority." Accordingly, it was held (p. 351) that "the agreement [was] a lease and nothing more. . . . it [was] not a purchase nor [did] it have the attributes of a purchase." Nor is the long term of such a lease of any present legal significance. School boards are statutorily empowered to obtain, by lease, facilities for school purposes,[1] even where such facilities are located in outside districts.[2] And, just as leasing of a property by a school district may become necessary, so a long-term lease may be desirable and is no less legal. The "validity [of long-term leases to the Commonwealth] has been sustained by our cases": *Kelley v. Earle*, supra, at p. 347. Characterizing the authorized leasing procedure in the present instance a subterfuge does not help to a correct solution of the problems presented. In *Kelley v. Earle*, supra, it was relevantly observed (p. 351) that "The fact that the proposed plan might be termed an evasion of the Constitution, would not condemn it unless such evasion was illegal. 'It is never an illegal evasion to accomplish a desired result, lawful in itself, by discovering a legal way to do it': *Tranter v. Allegheny County Authority*

---

[1] See Sec. 602 of the Act of May 18, 1911, P. L. 309, Art. VI, 24 PS § 672; and General State Authority Act of June 28, 1935, P. L. 452, as amended by the Act of September 8, 1938, P. L. 23, Sp. Sess., 71 PS § 1707-9.2.

[2] See Act of May 27, 1919, P. L. 298, Sec. 1, amending Sec. 602 of the Act of May 18, 1911, P. L. 309, 24 PS § 672; and Act of April 27, 1925, P. L. 348, Sec. 1, further amending Sec. 602 of the Act of 1911, cit. supra.

[316 Pa. 65, 84]." The real and substantial inquiry is, therefore, as to the legality of the means presently proposed for accomplishing the desired end.

Although the appellant concedes, and it is admitted on all sides, that the desired result (i. e., additional needed school facilities on a long-term lease) is lawful in itself, he argues, nonetheless, that the lease arrangement will work an unconstitutional increase in the indebtedness of the School District, principally, for the reasons (1) that the project is not self-liquidating and (2) that, exclusive of its State appropriation, the School District will not have sufficient current revenues to pay the annual rental.

The fact is, however, that the project, here in contemplation, will be self-liquidating in the sense that that term was employed in *Kelley v. Earle*, supra. It is true that in the *Kelley* case it was also remarked (p. 345) that "Many of the projects with which these contracts and leases are concerned are self-liquidating projects sustainable under the case of *Tranter v. Allegheny County Authority*, 316 Pa. 65." At best, that statement was a *dictum*. For, while some of the projects in prospect under the General State Authority Act of 1935, P. L. 452, were to be self-liquidating, as the projects in the *Allegheny County Authority* case were intended to be, i. e., from tolls, etc., to be charged the individual users of the public facilities afforded by the projects, the particular project under assault in *Kelley v. Earle*, supra, involved a proposed lease from the General State Authority to the State Department of Welfare of a "complete water works system" for the Selinsgrove State Colony for Epileptics at varying fixed annual rentals, payable by the Commonwealth, in amounts sufficient to pay the interest on and the whole of the principal of the construction indebtedness within thirty years. No revenues were to be derived directly from the operation

of the water works. Yet, the project was considered to be self-liquidating because (p. 342) "The facts show that the Commonwealth has ample resources to pay the annual obligations of rent. . . ."

It is plain enough that to be self-liquidating within the intent of the decisions of this Court, under various of the Authority Acts, a project need not directly pay for itself out of returns received therefrom by way of tolls or rates charged individual users of the facility. "A self-liquidating project may be defined as one wherein the revenues received [by the lessor] are sufficient to pay the bonded debt and interest charges over a period of time. *The source of the receipt is not important*": *Kelley v. Earle,* supra, at p. 345 (Emphasis supplied). It is equally plain that a school building project under the instant Authority Act is self-liquidating if the annual rentals for the building, payable by the School District from current revenues, are sufficient to discharge, over the period of years fixed by the lease, all debt service and the entire debt incurred by the lessor in the construction of the project. Here, as in *Kelley v. Earle,* supra, p. 345, "When the annual rent is compared with the revenues received by [the School District] . . . there is no question but that [the project will be] self-liquidating."

The appellant cites *Williams v. Samuel,* 332 Pa. 265, 2 A. 2d 834, and *Gemmill v. Calder,* supra, as sustaining the projects there involved, under the Municipality Authorities Act of 1935, P. L. 463, as amended,[3] on the ground that they were self-liquidating. The fact is that in the *Gemmill* case the project was self-liquidating because the Borough of Swarthmore would have ample current revenues (potentially twenty times more than

---

[3] Repealed and superseded by Act of May 2, 1945, P. L. 382, since amended by Act of June 12, 1947, P. L. 571 (53 PS §§ 2900Z-1 to 2900Z-2).

requirements) wherewith to pay the annual rentals necessary for the liquidation of the principal and interest of the lessor's bonds. In the *Williams* case the self-liquidating character of the project, which this Court in its decree required, was necessitated by reason of the fact that the intended municipal lessee of the project had been operating at an annual deficit for five years, last past, and was without sufficient current revenues to pay the stipulated rental under the proposed lease.

"Current revenues" of a municipality have been defined by this Court as including "taxes for the ensuing year and all liquid assets, such as delinquent taxes, licenses, fines and other revenues which, in the judgment of the authorities, are collectible": *Georges Township v. Union Trust Co.*, 293 Pa. 364, 369, 143 A. 10, quoted with approval in *Galion Iron Works & Mfg. Co. v. Hollenback Twp.*, 297 Pa. 68, 73, 146 A. 448. See also the definition to be found in Sec. 102(e) of the Municipal Borrowing Law of June 25, 1941, P. L. 159, 53 PS § 2011.102 Pkt. Par. A State appropriation to a school district is in reality made in reimbursement of a portion of the school district's operating expenses for the preceding fiscal year. The formula prescribed by Secs. 1241 and 1242 of the School Code of 1911, P. L. 309, as amended (24 PS §§ 1216.1 and 1216.2 Pkt. Par.), for allocating a general State appropriation for school purposes among the various school districts treats the allocations as reimbursements to the districts for expenses incurred by them in the fiscal year immediately preceding the receipt of the appropriated fund. A State appropriation to a school district is substantially a debt and, while not adversarily collectible because of the sovereign's immunity from suit, it at least qualifies as a liquid asset. The school directors of any district know, when making up the annual budget for their district, exactly what will be received from, and what they have

a right to expect will be paid by, the State for school purposes in the ensuing fiscal year. Such appropriations are properly a part of the school district's current revenues.

Nor is it unjustifiable to assume, in estimating future current revenues, that the School District will continue to receive an annual State appropriation. The responsibility of the legislature in the premises is direct. Article X, Section 1, of the Constitution lays upon the legislature a duty to maintain "a thorough and efficient system of public schools". In interpreting that provision in *Wilson v. Philadelphia School District*, 328 Pa. 225, 231, 195 A. 90, we said that "The school system, or the school districts, then, are but agencies of the state legislature to administer this constitutional duty." The legislative duty in such regard is certainly no less imperative where the school districts are but carrying out what the legislature itself specifically authorized them to undertake: Sec. 5 of the State Public School Building Authority Act quoted supra. The likelihood, therefore, of continued State appropriations to the School District is equally as great as was the expectation of recurrent legislative appropriations to the Department of Public Welfare (the prospective lessee of the General State Authority) in *Kelley v. Earle*, supra, which was there held (p. 342) to be justifiable. And, within extant general statutory authorization (Sec. 537 of the Act of 1911, as amended, cit. supra), the School District can levy not only additional taxes almost sufficient of themselves to discharge the annual rent obligation under the lease in question but, beyond that, it can levy still further taxes for special services (Sec. 1210 of the Act of 1911, as amended, cit. supra) which it has not yet done and which would be in relief of its general funds in an amount many times the annual rental requirement.

It is clear, therefore, that the current revenues of the School District are legally sufficient to pay the

annual rental charge. And, inasmuch as the rental is, by the terms of the proposed lease, payable solely from current revenues, there is no question present of any possible increase in the indebtedness of the School District through its execution of the proposed contract with the Authority and the consequent lease. As was said in *Appeal of the City of Erie*, 91 Pa. 398, 403,—"If the contracts and engagements of municipal corporations do not overreach their current revenues, no objections can lawfully be made to them, however great the indebtedness of such municipalities may be; for in such case their engagements do not extend beyond their present means of payment, and so no debt is created." See, also, *Wade v. Oakmont Borough*, 165 Pa. 479, 488, 30 A. 959.

But, even if the current revenues in any year should prove insufficient or unavailable for the payment of the lease rental, there would still be no debt liability enforceable against the School District. According to the case stated, the lease expressly provides that "If the entire rental for any year is not paid out of the current revenues of the School District for such year, the balance thereof shall be paid out of the current revenues of succeeding years." And, although the Authority may declare the lease forfeited and re-enter the premises for a default of six months or more in the payment of a rent installment, etc., and may have a receiver for the property appointed, manifestly there is no legally enforceable liability for either the principal or interest attaching to the School District. The power of such a receiver is even "limited to the operation and maintenance of the project"; and he is without power to "sell or dispose of any assets of the Authority [or] the land upon which the project is erected." The fact that the School District assumes the burden of the operation and maintenance of the project is no more effective as an objec-

556

tion to the proposed lease than was the similar argument made in *Tranter v. Allegheny County Authority*, supra, and there rejected for reasons which *Kelley v. Earle* appraised (p. 350) as adequate.

An "outstanding factor" is "the immunity of [the School District's] property and the inability of creditors to compel payments beyond the sums available for current revenues",—a situation which was said in *Kelley v. Earle*, supra (p. 351), to differentiate the contract in that case (similar to the present) from the contracts involved in the cases there cited and which the present appellant likewise cites, viz., *McKinnon v. Mertz*, 225 Pa. 85, 73 A. 1011; *Lesser v. Warren Borough*, 237 Pa. 501, 85 A. 839; and *Brown v. City of Corry*, 175 Pa. 528, 34 A. 854. In the cases just cited, although the obligations of the particular municipalities were to be payable, in installments, out of current revenues over specified periods of years, the obligations were nonetheless the *direct engagements of the municipalities* for the acquisition of capital assets and constituted the incurrence of prohibited indebtednesses. In the present instance, the School District acquires no property; the indebtedness is the indebtedness of the Authority; and, as in *Kelley v. Earle*, supra (p. 351), the School District's credit as such is not behind the Authority's bonds.

In *Tranter v. Allegheny County Authority*, supra, Mr. Justice LINN said for this Court (p. 85), in pertinent relation, that "The denial of power to incur liability on the credit of the [School District] . . . is notice to the prospective purchasers of the bonds that their security and their only source of payment will be in the revenues [rentals] derived from users of the improved . . . facilities . . . no [School District] . . . property can be taken for the debt, because the bondholders have agreed to look to a special fund for payment to be raised in the manner provided." Here,

neither the proposed contract with the Authority nor the lease therein provided for, when executed by the School District, will impose upon it any indebtedness within the contemplation of either Section 8 or Section 10 of Article IX of the Pennsylvania Constitution. Nor do we find, in similar connection, anything unconstitutional in the provisions of the State Public School Building Authority Act of July 5, 1947, P. L. 1217.

The decree is affirmed at the appellant's costs.