## In re Avoca Borough School District Indebtedness

*J. Earl Langan* and *Thomas C. Gibbons*, for petitioner.

*Reap and Reap*, for respondents.

PINOLA, J., January 14, 1953.—The School District of the Borough of Avoca asks leave to fund its unfunded debt totaling $68,820.29, all of which is alleged to have been contracted for current operating expenses for prior fiscal years.

At argument petitioners agreed to delete from the list of debts attached to the petition, two items: John J. Reilly, $1,000, and F. H. Hoban, $239.80. This reduces the total amount to $67,580.49.

Nearly 200 taxpayers of the community object to certain of the remaining items for various reasons.

They contend that notes totaling $32,447.89, the proceeds of which were used to pay teachers' salaries, and the balance of two other notes, $14,000, all payable to the First National Bank of Avoca, are not properly included because the State appropriation was pledged for the payment of the first group and the proceeds of wage taxes were pledged for the payment of the second group. That being so, they argue, the notes are not properly debts of the district under the provisions of the Municipal Borrowing Law.

Section 102(*f*) of that law, the Act of June 25, 1941, P. L. 159, 53 PS §2011.102, defines "debt" as including "all general obligations of the municipality to pay money either in the present or future, except obligations payable from current revenues. . . ."

And section 102(e) defines "current revenues" as including "taxes for the current year, delinquent taxes, licenses, fines and other revenues and receipts which in the judgment of the corporate authorities are collectible within the current fiscal year."

On April 7, 1952, the district borrowed from the First National Bank of Avoca, $7,088.03, in pursuance of a resolution, section 3 of which provides that the note "shall be payable from the State appropriation due during the month of October, 1952." In section 4 it "specifically appropriates sufficient of (the) State appropriation for the payment of the principal and interest of said loan."

It then borrowed from the same bank, $8,000 on May 6, 1952, $6,285.55 on May 16, 1952, $3,816.78 on May 29, 1952, $3,882.65 on June 16 1952, and $3,374.88 on June 30, 1952, all in pursuance of a resolution dated May 5, 1952, authorizing the borrowing of $25,000. Section 3 of this resolution likewise provides that the notes "shall be payable from the State appropriation for teachers' salaries due during the month of October, 1952."

Counsel for the school district contend that the State appropriation payable in October 1952 was properly applicable only to the loans made or salaries payable during the fiscal year 1952-53.

Counsel for the objectors, on the other hand, contend that the State appropriation due and payable in October is, in fact, merely reimbursement of part of teachers' salaries paid in the fiscal year 1951-52, and therefore, it is properly "current revenue" for that fiscal year.

The appropriation may well be a reimbursement because Justice Jones said in Greenhalgh v. Woolworth et al., 361 Pa. 543, 553:

"A State appropriation to a school district is in reality made in reimbursement of a portion of the school

district's operating expenses for the preceding fiscal year. The formula prescribed by Secs. 1241 and 1242 of the School Code of 1911, P. L. 309, as amended (24 PS §§1216.1 and 1216.2 Pkt. Par.), for allocating a general State appropriation for school purposes among the various school districts treats the allocations as reimbursements to the districts for expenses incurred by them in the fiscal year immediately preceding the receipt of the appropriated fund. A State appropriation to a school district is substantially a debt and, while not adversarily collectible because of the sovereign's immunity from suit, it at least qualifies as a liquid asset. The school directors of any district know, when making up the annual budget for their district, exactly what will be received from, and what they have a right to expect will be paid by, the State for school purposes in the ensuing fiscal year. Such appropriations are properly a part of the school district's current revenues."

And we find that, in dealing with reimbursement by the Commonwealth, the legislature in section 1241 of the Act of May 18, 1911, P. L. 309, as amended by Act of July 5, 1947, P. L. 1266, sec. 4, declared:

"The amount of payment to be made by the Commonwealth to any school district during the school year 1947-48 for the school year of 1946-47, on account of the instruction of pupils under the provisions of this section, shall not be less than the amount paid to the district during the school year 1945-46 on account of the salaries of full time members of the teaching and supervisory staff of the district."

But whether it is or not, the rule of law that a municipal body may not pledge as security for a loan made during one fiscal year, assets accruing during the succeeding fiscal year, should not be invoked in this case.

The bank had a right to rely in making the loans on the representation of the district that the October in-

stallment of State appropriation was legally applicable to the payment of its notes. The district is estopped to set up its own action, if it be illegal, to defeat the bank: Miners Savings Bank of Pittston v. Duryea Borough, 331 Pa. 458.

Moreover we cannot permit the district to repudiate an agreement, which the legislature requires it to carry out: School Code of March 10, 1949, P. L. 30, sec. 635, 24 PS §6-635.

With reference to the notes for which the wage taxes were pledged, the situation is different.

On November 8, 1951, $10,000 was borrowed, of which $1,000 was repaid on June 25, 1952. Section 4 of the resolution authorizing this loan, provides:

"The receipts from wage taxes are hereby pledged for the repayment of this note and such tax money shall be used for no other purpose until the said note is paid."

On May 16, 1952, the board borrowed $5,000. Section 3 of the resolution authorizing this loan provides:

"That said promissory note . . . shall be payable from wage tax collected by the Avoca Borough School District."

There was on deposit in the wage tax account, on June 30, 1952, the sum of $1,875.87.

If that balance were applied, the amount remaining due on the two notes would be $12,124.13.

As we understand it, the wage taxes received monthly from various employers, were collected by a separate collector and placed in a separate fund. The school directors very properly borrowed in anticipation of these particular receipts which are in the same category as the receipts from other taxation. Such receipts might reach the amount anticipated so that the district could pay both notes. On the other hand, they might not. And, since they did not in this case, the district very properly included in the budget for the

fiscal year 1952-53 the balance of the obligations which remained unpaid on the first Monday of July, 1952: School Code of March 10, 1949, P. L. 30, sec. 635, 24 PS §6-635 and sec. 640, 24 PS §6-640. Of course, the directors are duty bound to apply to the payment of the two notes the balance on deposit for that purpose on June 30, 1952, to wit, $1,875.87.

The objectors complain also that the district has improperly included the sum of $1,888, which represents obligations of the athletic council.

Under section 511 of the Public School Code of March 10, 1949, P. L. 30, as amended, 24 PS §5-511, school directors are authorized to adopt rules and regulations regarding, inter alia, athletics and musical activities.

A class or any organization is authorized to raise, expend or hold funds in its own name and under its own management from school activities. Paragraph (d) of this section specifically provides that "such funds shall not be the funds of the school district but shall remain the property of the respective school, class, organization, club, society, or group."

The board of directors of this school district has adopted rules and regulations creating an athletic council and governing athletics and the band, and in section 5 thereof it has provided that:

"Proceeds from athletic events, band concerts, stadium rental, and other funds raised by the Athletic Council shall not be the funds of the School District of the Borough of Avoca, but shall be and remain the property of the Athletic Council."

Under paragraph (f) of section 511 of the code, the board of school directors of any district is authorized to appropriate money only:

". . . for the payment of medical and hospital expenses incurred as a result of participation in such athletic events or games, practice or preparation therefor, or in transportation to or from such athletic events

or games, or the practice or preparation therefor, and for the purchase of accident insurance in connection with such participation and transportation."

The council cannot keep the funds while the school district pays the bills. All items which go to make up the total of $1,888 must, therefore, be excluded.

In passing, we point out that there is on deposit to the credit of the athletic council, the sum of $1,158.74, which should be applied to the payment of these obligations.

The objectors complain, too, of the inclusion of the sum of $21.75 alleged to be due to McHugh Brothers in connection with the use of a truck by several school districts for the hauling of certain equipment from Indiantown Gap. Since this expenditure was never authorized by the board of school directors, nor ever approved by the board, it cannot be considered a debt of district.

The objectors also complain of the inclusion of the sum of $152.30, part of the sum alleged to be due to Moosic Lumber Company. There is a dispute in the testimony concerning the reason for the debt. John Dolan, the secretary, testified that it was due for repairing doors in the spring of 1952. James O'Malley, a minority director and former president, testified that the balance was due on a concession stand built by the athletic council.

We will give the district the benefit of the doubt and permit this item to be included.

Objections to other items having been abandoned, we enter the following

*Order*

Now, January 14, 1953, approval is granted to the refunding of the unfunded debt of the School District of the Borough of Avoca in the sum of $31,346.98. The petition is denied as to the balance.