Elizabeth **RUPE**, Administratrix of the Estate of Walter A. Kozel, o/w Walter Kozel, o/w Walter A. Koziot, deceased, Plaintiff,

v.

STATE PUBLIC SCHOOL BUILDING AUTHORITY, a public corporation, Joseph Triglia, an individual, Chicago Pump Company, a subsidiary of F.M.C. Corporation, a foreign corporation, and Robert A. Bruno and Company, Inc., a Pennsylvania corporation, Defendants.

Civ. A. No. 64–1335.

United States District Court
W. D. Pennsylvania.

Aug. 17, 1965.

▮▮▮▮

---

Veto J. Rich, Pittsburgh, Pa., for plaintiff.

James W. Evans, Harrisburg, Pa., and Joseph M. Gelman, Pittsburgh, Pa., for defendant State Public School Building Authority.

Joseph E. Schmitt, Pittsburgh, Pa., for defendant Chicago Pump Co.

ROSENBERG, District Judge.

The State Public School Building Authority and the Chicago Pump Company, two of the four defendants, have here filed a number of motions. Chicago Pump Company withdrew its motions on August 6th, 1965; those of the State Public School Building Authority remain. The action was brought by the plaintiff under the Pennsylvania Wrongful Death Act and the Survival Statute.

The Authority's motion is based upon the defenses that (1) the action is barred because of failure to be timely filed; and (2) the Authority is a governmental instrumentality charged with the performance of a governmental function, and as such, is immune from liability for any negligence of its agents or employees.

It has been argued[1] here that the Wrongful Death action is barred by the Statute of Limitations. This is a diversity action and is governed by the law of Pennsylvania. The Pennsylvania statute which authorized the bringing of a

---

1. The School Authority withdrew this argument in its brief at page 2.

728

Wrongful Death action is contained in the Act of April 26, 1855, P.L. 309, § 2, 12 P.S. § 1603 and provides that an action for the wrongful death of a person may be brought within one year from the date of such death.

It is averred in paragraph 11 of the complaint that the plaintiff's decedent died on December 26, 1963. The action is based upon the negligence of the defendants.

The Pennsylvania Statutory Construction Act of May 28, 1937, P.L. 1019, Art. 3, § 38 (46 P.S. § 538) provides as follows:

> "When any period of time is referred to in any law, such period in all cases, except as otherwise provided in sections thirty-nine and forty,[2] shall be so computed as to exclude the first and include the last day of such period. Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation."

■ Applying the formula thus contained in § 38, December 25th, December 26th and December 27th were days of exclusion, since December 25th was Christmas Day, December 26th was a Saturday and December 27th was a Sunday. The first calculable day was therefore Monday, December 28th. Since the complaint was filed on December 28th, 1964, it was within the allowable time and is a valid filing.

The next questions are: Is the defendant, State Public School Building Authority, a governmental instrumentality, and as such, immune from lawful actions for the negligence of its officers or employees? The State Public School Authority was created by virtue of the provisions contained in the Act of July 5,

1947, P.L. 1217, § 1 et seq. (24 P.S. § 791.1 et seq.) This is known as the State Public School Building Authority Act. It defines in § 2[3] the State Public School Building Authority and constitutes in § 3[4] as its members, without compensation for their services, "[t]he Governor, the State Treasurer, the Auditor General, the Superintendent of Public Instruction, the Secretary of Property and Supplies, the President pro tempore of the Senate, the Speaker of the House of Representatives, the minority leader of the Senate, the minority leader of the House of Representatives, and their respective successors in office * * *".

It establishes this Authority as a "public corporation and governmental instrumentality in § 3."[5] It further makes this declaration in § 4[6]: "The Authority is created for the purpose of constructing, improving, maintaining and operating, public school buildings, and furnishing and equipping the same for use as public schools, *as a part of the public school system of the Commonwealth of Pennsylvania under the jurisdiction of the Department of Public Instruction.*" (Emphasis supplied)

■ The law of Pennsylvania is well settled that a school district is not liable for the negligence of its officers or employees in the exercise of the governmental functions of providing a system of education. Shields v. School District of City of Pittsburgh, 408 Pa. 388, 184 A.2d 240 (1962); Supler v. School District of North Franklin Township, Washington County, 407 Pa. 657, 182 A.2d 535 (1962); Morris v. School District of Mt. Lebanon Tp., 393 Pa. 633, 144 A.2d 737 (1958); Michael v. School District of Lancaster, 391 Pa. 209, 137 A.2d 456 (1958); Goldstein v. Philadelphia School District, 329 Pa. 71, 196 A. 863 (1938); Osborne v. City of Pittsburgh, 192 Pa. Super. 387, 161 A.2d 636 (1960).

---

2. Sections thirty-nine and forty have references to weeks and months not related to the circumstances here.

3. 24 P.S. § 791.2.

4. 24 P.S. § 791.3.

5. 24 P.S. § 791.3.

6. 24 P.S. § 791.4.

School districts are unlike the municipalities of the State, which are liable for negligence. Powers v. City of Philadelphia, 18 Pa.Super. 621 (1902); Winnemore v. City of Philadelphia, 18 Pa. Super. 625 (1902). Under the law of Pennsylvania, school districts are merely agents of the Commonwealth and cannot be held liable for the negligence of their employees. Erie School District v. Fuess, 98 Pa. 600 (1881); Ford v. Kendall Borough School District, 121 Pa. 543, 15 A. 812, 1 L.R.A. 607 (1888); Briegel v. City of Philadelphia, 135 Pa. 451, 19 A. 1038 (1890); Wallace v. Pittsburgh School District, 316 Pa. 388, 175 A. 211 (1934); Walsh v. Philadelphia School District, 343 Pa. 178, 22 A.2d 909 (1942), cert. denied 315 U.S. 823, 62 S. Ct. 916, 86 L.Ed. 1219 (1942).

■ ■ The functions of a school district are not limited to actual education but also extend to such functions as maintaining school buildings for public meetings. McKnight v. Board of Public Education, 365 Pa. 422, 76 A.2d 207 (1950), appeal dismissed 341 U.S. 913, 71 S.Ct. 737, 95 L.Ed. 1349 (1951); 32 P.L.E. Schools, § 57, p. 570. However, school districts may be held liable for negligence in the performance of any of its proprietary actions, such as holding real estate bought at a tax sale. Osborne v. City of Pittsburgh, supra; Morris v. School District of Mt. Lebanon Tp., supra.

■ The Legislature has spoken unequivocally in specifying the purposes of the authority and setting forth its powers "of constructing, improving, maintaining and operating, public school buildings, and furnishing and equipping the same for use as public schools, as a part of the public school system of the Commonwealth of Pennsylvania under the jurisdiction of the Department of Public Instruction." It is plain that the Authority, as thus constituted, has been woven into the fabric of the Pennsylvania educational system as a governmental function and operated ex officio by the State's executive officers. It is in its constituted sense a governmental instrumentality created for the governmental purpose of education as a part of "the public school system". The fact that the school system of Pennsylvania has been extended by the use of such an instrumentality does not detract from the legislative intentions and endeavors of providing a complete "public school system". In fact, the Legislature made it plain (24 P.S. § 791.4) that the Authority was created "as a part of the public school system of the Commonwealth of Pennsylvania under the jurisdiction of the Department of Public Instruction". What the Legislature did was, in effect, to give the Department of Public Instruction another arm in aiding it to administer the public school system of the Commonwealth. It was a proper and constitutional action. Detweiler v. Hatfield Borough School District, 376 Pa. 555, 104 A.2d 110 (1954); Greenhalgh v. Woolworth et al., 361 Pa. 543, 64 A.2d 659 (1949). In Greenhalgh, it was held that the Legislature had this authority for the purpose of improving education and educational facilities for the benefit of the people of the Commonwealth of Pennsylvania. In § 14 of the Act, it was said, " * * * the Authority will be performing essential governmental functions in effectuating such purposes * * * ".

■ The plaintiff argues that in the constructing of a sanitary treatment plant and providing it for a school building, the Authority was not performing a governmental function but rather a proprietary function similar to that which municipalities supplied for the use of the people of the community. But the plaintiff is in error in comparing a municipal sanitary treatment plant with a school building sanitary treatment plant, for in the case of the municipality the services rendered are on a fee basis and users of the system are charged in the same manner as they are charged for other utilities—water, gas and electricity. In the case of the school district, there is no fee payment to the users—the students and employees who attend and work in the

school buildings. Certainly it is more necessary than a playground which is considered a part of the educational system for the physical relaxation of the students and pupils who attend the school. Michael v. School District of Lancaster, supra; Kesman et al. v. Fallowfield Township School District, 345 Pa. 457, 29 A.2d 17 (1942); Goldstein v. Philadelphia School District, supra; Carlo v. Scranton School District, 319 Pa. 417, 179 A. 561 (1935).

The plaintiff in argument theorizes on page 2–b of her brief, "If this Honorable Court follows the law in the case of Gerr v. Emrick et al., supra, the plaintiff can maintain this action. However, if the Court follows the decision of law in the case of Rader v. Pa. Turnpike Commission, 407 Pa. 609, 192 [182] A.2d 199, which held that the turnpike commission is an instrumentality of the Commonwealth and engaged in a governmental function, and therefore not liable for torts, the plaintiff's case against the Authority is in a precarious position."

In Gerr et al. v. Emrick et al., 283 F.2d 293, C.A.3 (1960), our Court of Appeals for the Third Circuit held that the Pennsylvania Turnpike Commission, an instrumentality of the State, which operates and maintains the Pennsylvania Turnpike, was not endowed with the Commonwealth's sovereign immunity from suit for damages resulting from its negligence. This determination was made in the absence of any Pennsylvania appellate decision on that issue.

In 1962, the Supreme Court of Pennsylvania in Rader v. Pennsylvania Turnpike Commission, supra, disagreeing with the United States Court of Appeals, arrived at a different determination. It held the Pennsylvania Turnpike Commission to be an agency of the Commonwealth of Pennsylvania, and as such, immune to any actions against it for negligence. It made this determination (407 Pa. page 617, 182 A.2d page 204) on the basis that the statute by which the Legislature had created it and set forth its

purposes stated that the commission was constituted "an *instrumentality of the Commonwealth,* and the exercise by the commission of the powers conferred by this act * * * *shall be deemed and held to be an essential governmental function of the Commonwealth."* (emphasis supplied)

Even with the fact that the Pennsylvania Supreme Court has determined that the Turnpike Commission is an instrumentality of the Commonwealth and immune from actions for negligence, there is a difference between the Commission and in our case the Authority. This is pointed out in the minority opinion of Mr. Justice Musmanno when, at page 623, 182 A.2d at page 206, he said that the Turnpike Commission is "definitely and conclusively a business enterprise [and] there is no difference between a ticket to ride on a railroad train and buying a ticket to ride (albeit in your own automobile) on a high-speed highway specially constructed to attract fee-paying clients." The majority opinion at page 613, 182 A.2d at page 201, however, takes it out of the class of proprietary functions when it says "[t]he fact that a toll is exacted from users of the turnpike does not change the character of its operation from that of a governmental function."

Under Rader, the Turnpike Commission is ruled to be an instrumentality of the Commonwealth engaged in a governmental function and not liable for torts. At the top of page 614, 182 A.2d 199, it was indicated that the same phraseology which constituted the Commission as an agency of the Commonwealth for the purpose of performing governmental functions also held true for school districts under the School Code. Since, as we have already shown, these same provisions are contained in the Code of the State Public School Building Authority, the School Authority is more firmly entrenched as an agency of the Commonwealth "as a part of the public school system of the Commonwealth of Pennsylvania under the jurisdiction of the Department of

Public Instruction." By law, the State Public School Building Authority stands immune against any action here by the plaintiff and its motion for dismissal of the action against it must be granted.