## Clearfield Borough *v.* Clearfield Borough Park Authority.

Argued October 6, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Carl A. Belin, Jr.,* with him *Belin & Belin,* for appellant.

*Richard A. Bell,* with him *Bell, Silberblatt & Swoope,* for appellee.

OPINION BY JUDGE KRAMER, December 28, 1971:

This is an appeal from an Opinion and Order dated April 16, 1971, issued by the Court of Common Pleas of Clearfield County in an action in mandamus whereby judgment was entered on behalf of the defendant, Clearfield Borough Park Authority (Authority), after argument on a motion for summary judgment.

In 1955, the plaintiff, Clearfield Borough (Borough) established the Clearfield Borough Park Authority under the provisions of the Municipality Authorities Act of 1945, Act of May 2, 1945, P. L. 382, 53 P.S. 301 et seq., as amended. The purpose of the Authority was to acquire, maintain, improve and operate certain park property known as the Clearfield Driving Park. The Authority acquired the property in 1958 and has operated and maintained it to the present time.

On September 3, 1970, the Borough passed a resolution indicating its desire to acquire the Authority's property and demanding the conveyance of the Clearfield Driving Park to the Borough. The Authority refused to act upon the demand of the Borough and refused to convey the property to the Borough.

The Borough thereafter filed this action in mandamus, and after argument on a motion for a summary judgment, the court below directed judgment to be entered on behalf of the Authority. None of the facts is in dispute. The sole question presented to this Court involves the construction of Section 18 of the Municipality Authorities Act of 1945, *supra,* 53 P.S. 321, which reads as follows: "(A) If a project shall have been established under this act by a board appointed by a

municipality or municipalities, which project is of a character which the municipality or municipalities have power to establish, maintain or operate, and such municipality or municipalities desire to acquire the same, it or they may by appropriate resolution or ordinance *adopted by the proper Authorities,* signify its or their desire to do so, and thereupon the Authorities shall convey by appropriate instrument said project to such municipality or municipalities, upon the assumption by the latter of all the obligations incurred by the Authorities with respect to that project." (Emphasis added.)

The Authority argues, and the court below held, that the language of Section 18 requires that a resolution must be passed by the Authority approving the transfer of the project property before the municipality can acquire the property. This entire case hinges upon the words of Section 18: ". . . adopted by the proper Authorities, . . ." The court below ruled that these five words indicate a legislative intent that there is a discretion given to the Authority on whether or not it will permit the Borough to acquire the project property.

In the briefs submitted to this Court, the opinion of the court below and from our research, we find that there are only four cases which touch upon Section 18 of the Act. Two of these cases would indicate that Section 18 provides limits or restrictions upon the ownership of property by the Authority which would permit the municipality unilaterally to regain possession of the Authority's property. These cases are *Williams v. Samuel, et al.,* 332 Pa. 265, 2 A. 2d 834 (1938) and *Gemmill v. Calder, et al.,* 332 Pa. 281, 3 A. 2d 7 (1938). The other two cases would indicate that a municipality cannot retake the Authority's property unless the Authority passes a resolution approving the transfer. These cases are *Burke v. North Huntingdon Township,* 390 Pa. 588, 136 A. 2d 310 (1957) and *Bielski v. Borough of Jefferson,* 112 Pittsburgh Legal Journal 228

194

(1964). A careful reading of all four of these cases lends us to conclude that none of the prior judicial pronouncements has clearly ruled on the specific issues involved in this case, and although these cases could be cited to support the position of the respective parties to this suit, none of them controls our ruling in this case.

A reading of Section 18 leads us to conclude that it is ambiguous. Even Purdon's Statutes in Footnote No. 2 indicates that the word "Authorities" at that point footnoted in the section "probably should read 'Authority' as in subsection (b)."

In the interpretation of legislation, we are aided by the Statutory Construction Act, Act of May 28, 1937, P. L. 1019, 46 P.S. 501 et seq., at 46 P.S. 551:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of the law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such law." The Act also provides certain presumptions which a reviewing court may use in interpreting legislation. At 46 P.S. 552, we find: "In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following pre-

sumptions among others: (1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable: (2) That the Legislature intends the entire statute to be effective and certain; . . ."

Following these rules of interpretation, we first note that the wording of Section 18 is ambiguous. Therefore we must analyze the words of the statute to find the legislative intent. After first establishing the subject matter ("project established by a board" which "the municipality or municipalities have power to establish"), the statute next sets forth the words which give the section its purpose ("such municipality or municipalities desire to acquire the same"). Immediately following this are words describing how the purpose is accomplished ("it or they may by appropriate resolution or ordinance"). The words, "it or they" are pronouns referring back to the nearest nouns preceding them, which are "municipality or municipalities." The next words "adopted by the proper Authorities" being a part of the same phrase must also refer to those governmental bodies which can pass the resolution or ordinance. This analysis is further aided by the next phrase, "signify *its* or *their* desire to do so," for here the only party (or parties) whose desire sets in motion this process is the municipality or municipalities.

The Authority board is referred to in the singular number, but municipality or municipalities are referred to in both singular and plural numbers throughout the section.

This analysis leads to only one conclusion, and that is that the Legislature intended that the resolution or ordinance should be adopted by the proper authorities (here we use a small case "a"), meaning the municipality or municipalities.

We also note that the Legislature in Section 18, used the terms "resolution or ordinance." We can find nothing in the statute which would permit an authority

organized under this Act to pass an ordinance. An authority throughout this Act may pass a resolution, but nowhere may it pass an ordinance. For this additional reason, we hold that the Legislature intended to permit a transfer of authority property by the unilateral action of a municipality or municipalities.

We also researched the Pamphlet Laws of Pennsylvania for the year 1937, Volume 1 at page 750, where we found the amendatory language to Section 18 during that year. The following quotation of pertinent parts of the amended section indicates the amendatory words as italicized: ". . . And such municipality [desires] or *municipalities desire* to acquire the same, it *or they* may by appropriate resolution or ordinance, adopted by the proper Authorities, signify its *or their* desire to do so. . . ." Why the word "Authorities" in the foregoing segment is capitalized is not explained anywhere; but this 1937 amendment is further proof of the intent of the Legislature, in referring to the plural, to make it clear that the resolution or ordinance necessary for the acquisition of the authority's project property, must be passed by the municipality or municipalities.

Based upon the above analysis of Section 18 of the Act, we hold that the legislative intent is to permit the Borough to obtain the project property of the Authority by the passage of a borough resolution or ordinance expressing a desire to acquire such property and to assume all the obligations applicable to the property being acquired, and therefore we must reverse the court below.